**STATE ex rel. LEECRAFT, State Treas., v. INCORPORATED TOWN OF HOFFMAN.**

No. 17716.    Opinion Filed Oct. 11, 1927.

(Syllabus.)

**1. Municipal Corporations—Bonds and Coupons—Negotiable Character.**

Municipal bonds and coupons, payable to bearer, are subject to the same rules as other negotiable paper.

**2. Same—Innocent Purchasers—Bonds Acquired Subject to Defense Against Past Due Interest Coupons.**

Where, at the time the State Treasurer acquired certain municipal bonds, some of the interest coupons attached thereto were past due, the treasurer took such past-due coupons subject to any defense against them that existed.

**3. Same—Bonds and Coupons Su* sequently Maturing not Subject to Defenses Against Original Holder.**

An overdue and unpaid coupon for interest, attached to a municipal bond which has several years to run, does not render the bond and the subsequently maturing coupons dishonored paper, so as to subject them, in the hands of a purchaser for value, to defenses good against the original holder.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by the State of Oklahoma ex rel. A. N. Leecraft against the Incorporated Town of Hoffman. Judgment for defendant, and plaintiff appeals. Reversed and remanded, with directions.

Edwin Dabney, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for plaintiff in error.

Wellington L. Merwine, for defendant in error.

MASON, V. C. J. The plaintiff, A. N. Leecraft, State Treasurer, acting under the provisions of section 8605, C. O. S. 1921, designated the Bank of Hoffman as a state depository, and $5,000 of the state's funds were deposited therein, after taking from the bank a surety bond for an equal sum

executed by the Lion Bonding Surety Company. Thereafter, on the 29th day of December, 1920, said bonding company notified the State Treasurer of its intention to cancel its bond, whereupon the treasurer notified the Bank of Hoffman that he would recall said deposit, unless further security was given. No additional security having been given, the treasurer, on the 14th day of January, 1921, drew a draft on the bank for $5,000, the amount of deposit, but the draft was returned dishonored, with the statement from the bank that the bonding company had no right to cancel its bond. The draft was then canceled and the deposit reinstated, and thereafter the bonding company became insolvent, on about the 15th day of April, 1921.

The State Treasurer then demanded of said bank other depository security in a sum equal to said deposit, and, on May 7, 1921, said bank transmitted to said treasurer five $1,000 negotiable town hall bonds of the town of Hoffman, Okla., which were duly accepted by the treasurer as security for said deposit. Each of said bonds had interest coupons attached thereto, which became due at different times, therein expressed. Thereafter, the Bank of Hoffman failed, and said deposit was lost to the state, and this action then commenced, under the provisions of section 8612, C. O. S. 1921, by the State of Oklahoma ex rel. A. N. Leecraft, State Treasurer, against the Incorporated Town of Hoffman, to recover on the 20 interest coupons attached to said bonds.

The case was submitted on an agreed statement of facts wherein it was agreed, in addition to the facts hereinbefore set out, that said bonds had been duly issued; that estimates to retire said bonds and the interest on the same had been made and approved by the excise board of Okmulgee county and that proper levy had been made and collected for said purpose; that approximately $3,000 was at said time deposited to the credit of the interest and sinking funds of said town for that purpose; that after said bonds had been duly issued they were delivered by the proper officials of said town to R. E. Myers, cashier of said bank, who, at the time, was also treasurer of said town, to be held by him as such town treasurer; that said bank never owned said bonds; that the officers of said town, other than said town treasurer, did not know that said bonds had been pledged to secure said deposit until after the bank was adjudged insolvent; that at the time said bonds were pledged to the state, the first

interest coupon, which was attached to each of said bonds, was then past due and unpaid; that the town never received any consideration for said bonds.

The court rendered judgment for the defendant, and the plaintiff appeals.

For reversal, it is urged that the plaintiff was a purchaser for value without notice and that said bonds were instruments of such a character and in such a condition as to enable the plaintiff to enforce them against the defendant town, notwithstanding the fact that it had received no value for them. No contention is made that the State Treasurer had any notice, at the time he accepted them, of any defense to said bonds, except such as may be imputed to him from the fact that one of the coupons attached to each of the bonds was then past due and unpaid.

The principal question for our determination is whether this fact rendered the bonds themselves and all subsequently maturing coupons dishonored paper, and subjected them in the hands of the plaintiff to all defenses good against the original holder. The record does not disclose that the overdue coupons had been presented for payment and payment refused, but if such were a fact, we fail to see how nonpayment of an installment of interest when due could affect the negotiability of the bonds or of subsequent coupons.

Municipal bonds and coupons payable to bearer are subject to the same rules as other negotiable paper. State ex rel. West, Atty. Gen., v. City of Sapulpa, 58 Okla. 550, 160 Pac. 489. Therefore, until their maturity, a purchaser for value, without notice of their invalidity as between antecedent parties, would take them discharged from all infirmities.

Whatever fraud the town treasurer, who had lawful possession of said bonds for the purpose of finding a purchaser, may have committed in disposing of them could not affect the title of a subsequent bona fide purchaser for value before maturity.

It is insisted by the defendant in error that these circumstances were sufficient to put the plaintiff upon inquiry, which would have disclosed that the bank was not the owner of said bonds. This contention is without merit. As with other negotiable paper, mere suspicion that there may be a defect of title in its holder, or knowledge of circumstances which would excite suspicion as to his title in the mind of a prudent man, is not sufficient to impair the title of the purchaser.

That result will only follow where there has been bad faith on his part.

The interest stipulated and represented by the coupons was a mere incident of the debt. The holder of said bonds had his option to insist upon the payment of said coupons when they became due, or to allow them to run until the maturity of the bond, or until the principal was payable.

In Railway Company v. Sprague, 103 U. S. 756, the Supreme Court of the United States, in discussing this question, said:

"Coupons are separable obligations for the interest payable upon demand. It constantly occurs that they are not demanded for weeks and months, and sometimes years, after they are due. As they bear interest after maturity, it will frequently happen that the owner of a bond who holds it as an investment will keep the coupon for the same purpose.

"Bonds executed by a railroad company may not be put upon the market until one or more coupons have matured. The company may cut them off when it sells the bonds, or leave them on to be accounted for in the purchase.

"Negotiable bonds have been used as a means of raising money, not only by railroad companies, but by the national government, states, counties, and cities. To hold that the moment an unpaid coupon is left on a bond its character and negotiability are changed would greatly embarrass the traffic in such securities and lead to endless uncertainty and confusion."

In Hainer's Modern Law of Municipal Securities, section 349, the rule is announced as follows:

"Overdue and unpaid coupons for interest attached to a negotiable bond, which has several years to run, do not render the bond and subsequently maturing coupons dishonored paper, so as to subject them in the hands of a purchaser for value to defenses good against the original holder."

To the same effect, see 9 Corpus Juris, pages 66, 67.

Some contention is also made relative to whether there was a consideration from the plaintiff to the bank for said bonds. It is true no new monetary consideration was paid by the plaintiff at the time the bonds were delivered, but the bank held $5,000 of the plaintiff's money on deposit, which it was entitled to withdraw, but upon delivery of said bonds this deposit was permitted to remain in the bank. In order that a purchaser of a bond may be entitled to protection against equities and defenses to which the bond would be subject in the

hands of antecedent holders, he must be not a mere volunteer, but a purchaser or holder for a valuable consideration. But it is not necessary that he should part with money or money's worth; if he parts with or cedes an existing right, or if he forbears or suspends legal remedies, there is, in the legal sense of the term, a valuable consideration. Thus a valuable consideration exists where a creditor extends time for the payment of a debt. 9 Corpus Juris, p. 64.

We, therefore, reach the conclusion that the mere presence of an unpaid coupon upon each of the bonds delivered to the plaintiff by the Bank of Hoffman was not of itself sufficient evidence of dishonor of the bonds to which they were attached. The plaintiff took said bonds and the subsequent maturing coupons as a bona fide purchaser, and, as such, was entitled to recover on all of the coupons sued on, except those which were due at the time they were delivered to him by the bank.

The judgment of the trial court is reversed, and the case is remanded, with directions to grant a new trial and proceed in accordance with the views herein expressed.

BRANSON, C. J., and HARRISON, PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 28 Cyc. p. 1610; 19 R. C. L. p. 989. (2) 9 C. J. p. 67, §110. (3) 9 C. J. p. 67, §110.