**HOBART M. CABLE CO. v. BRUCE et al.**

No. 18531. Opinion Filed Dec. 31, 1928.

Rehearing Denied Feb. 19, 1929.

Ames, Cochran & Ames, for plaintiff in error.

H. M. Jarrett, for defendants in error.

JEFFREY, C. This action was begun in the district court of Lincoln county by the Hobart M. Cable Company, a corporation, as plaintiff, against W. W. Bruce, Jr., and J. A. Scott, partners doing business under the firm name of Bruce & Scott, as defendants, to recover on 29 separate promissory notes. Defendants were engaged in the theatre business at Chandler, Okla. They purchased of the Padelford Music Company of Oklahoma City, Okla., a Wurlitzer piano-organ, style link, No. 2969, which was to have 52 flutes. In part payment of the purchase price, defendants, on July 28, 1925, executed a series of 33 promissory notes, numbered from 1 to 33, inclusive. Notes Nos. 1 to 4, inclusive, were each for the sum of $15. Notes Nos. 5 to 32, inclusive, were each for $20, and note No. 33 for $30. Note No. 1 was made to mature September 1, 1925, and one note, in numerical order, was made to mature on the first day of each month thereafter up to and including May 1, 1928. At the same time defendants gave the Padelford Music Company a chattel mortgage on the

piano to secure the payments of the notes which was filed for record in Lincoln county. All notes were negotiable in character and identical in form, except the amounts thereof and due dates; were given as a part of one transaction and for one consideration, but do not contain an acceleration clause. Each note contained the recital:

"This note is given as part payment on a Wurlitzer piano-organ. Style link, No. 2969."

The notes also recited that a mortgage lien was given on said property to secure its payment. The mortgage contained the following recital:

"It is agreed that if any one of said notes remain unpaid for 30 days after it is mature, then at the option of the legal holder of such note all of said notes shall become due and payable."

The piano was delivered, but was not as represented by the Padelford Music Company, and was worthless for the purpose for which it was bought. Defendants then took the matter up with the Padelford Music Company, which company agreed to make satisfactory adjustments. Apparently no effort was made by defendants to secure the return of their notes, but instead notes Nos. 1 and 2 were paid when due.

The Padelford Music Company, being indebted to plaintiff, the Hobart M. Cable Company, on December 19, 1925, indorsed and delivered to plaintiff as part payment on its indebtedness, notes Nos. 3 to 33, inclusive. The music company failed, and defendants having refused to pay the notes, plaintiff brought suit on notes Nos. 5 to 33, inclusive. At the time the notes were indorsed and delivered to plaintiff, notes Nos. 3 and 4 were past due, and they were not included in plaintiff's action. It is conceded that, at the time plaintiff purchased the notes in question, it had no knowledge of the failure of consideration, and that there are no facts which might constitute notice of such infirmity in the instruments, or defect in the original holder's title, except such as might be imputed to plaintiff by reason of the recitations in the notes themselves, and the further fact that two of the series were past due at the time of negotiation.

When the case was called for trial, both parties waived a jury, and submitted the cause to the court on certain evidence offered, together with a stipulation covering other portions of the evidence. There appears to have been no dispute as to the facts, but the cause was submitted to the court on a pure question of law. Judgment was rendered for defendants, and plaintiff has appealed.

The determination of the appeal will be controlled by the one question, Does the mere fact that two of the series of 31 separate notes, showing on their face that they were all given for one consideration and arose out of one transaction, were past due, prevent one, who purchases the series for value, otherwise in good faith, and without actual notice of any infirmity in the title of the transferror, from becoming a holder in due course of the 29 notes not then due?

It seems to be conceded, and the facts in the case settle beyond doubt, that the conditions under which plaintiff took the instruments meet the first, second and third requirements prescribed by section 7722, C. O. S. 1921, defining a holder in due course, but the disputed question is whether, at the time the underdue notes were negotiated to plaintiff, it had notice of any infirmity in the instruments or defect in the title of the Padelford Music Company. It should be borne in mind that the notes were separate instruments; that only two of the notes were past due at the time plaintiff took them; that the notes contained no accelerating clause; and that the mortgage provided that, in case any note should remain unpaid for 30 days after its maturity, then, at the option of the legal holder of such notes, all of said notes should become due and payable. No option had been exercised prior to the transfer of the notes in question. The mere default in one note did not ipso facto mature all notes of the series, but, under such a provision, there must be some affirmative action evidencing the exercise of the holder's option after such a default. Wolfley v. Wooten (Mo. App.) 293 S. W. 73. This was not done until May 7, 1926, when plaintiff wrote defendants that it did exercise such option declaring all of the notes due and payable at once. So none of the notes included in the suit were due at the time they were transferred to plaintiff.

Section 7726, C. O. S. 1921, being a part of the Negotiable Instruments Act, is as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of infirmity, or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

This court has uniformly held, in applying the foregoing section, that suspicion or the knowledge of circumstances which would

excite such suspicion in the mint of a prudent man, or of circumstances sufficient to put one upon inquiry, is not sufficient to defeat the rights of one claiming to be a holder in due course. It has been uniformly held by numerous decisions of this court that that result can be produced only by a showing of actual knowledge of the infirmity or defect, or knowledge of such facts that one's action in taking the instrument amounted to bad faith. Circumstances or suspicions may be so cogent and obvious that to remain passive would amount to bad faith, but, in the absence of actual knowledge, bad faith or the absence of it is the test. Forbes v. First National Bank of Enid, 21 Okla. 206, 95 Pac. 785; McPherrin v. Tittle, 36 Okla. 510, 129 Pac. 721; Conquerer Trust Co. v. Bayless Drug Co., 75 Okla. 288, 183 Pac. 419; S. W. National Bank of Commerce of K. C. v. Todd, 79 Okla. 263, 192 Pac. 1096; Sanley v. Wilkinson, 107 Okla. 54, 229 Pac. 574; Liberty National Bank of Pawhuska v. Kendall, 113 Okla. 140, 240 Pac. 72; Gaither v. First National Bank of Muskogee, 113 Okla. 111, 239 Pac. 461.

The case of Forbes v. First National Bank of Enid, supra, seems to be the parent case on the subject in this jurisdiction. In that case Forbes received a draft made payable to himself on the 19th day of April, 1904, and deposited it with the Citizens Bank of Enid. At the time the deposit was made, the bank was insolvent, and was known to be so by its officers. On the day the draft was deposited, the Citizens Bank delivered it to the First National Bank of Enid to cover clearances. At the time of this delivery, the First National Bank of Enid knew that the Citizens Bank was insolvent, but did not know that the draft had been taken for deposit. When the Citizens Bank failed, Forbes stopped payment on the draft, and the First National Bank of Enid brought suit to recover the amount of the draft from Forbes. The evidence showed that Goltry, one of the officials of the First National Bank, went to the Citizens Bank after banking hours and obtained the draft in question, together with other items, to cover the balance owing that bank by the Citizens Bank, when he knew that the Citizens Bank was in a failing condition. On the question of notice of defects in the title to the draft, the court said:

"He contends that the circumstances, under which the draft was obtained. were such as should have created a suspicion in the mind of Goltry, and put him upon inquiry, and that his not having made inquiry of the assistant cashier of the Citizens Bank as to how he obtained the draft establishes the bad faith of the plaintiff. We think this contention not well founded, for it has become the well-established rule in the federal courts of the Union, and in the greater number of state courts, that suspicion of defect of title, or even gross negligence on the part of a taker of a negotiable instrument, will not defeat his title."

In that case the court quoted with approval from Tiedeman on Bills and Notes, page 256, as follows:

"But the great weight of authority in this country, as well as reason, supports the contrary doctrine, that the bona fide character of a holder can be destroyed only by proof of participation in or actual knowledge of the fraudulent or illegal character of the instrument'."

The Forbes Case had been cited and followed in practically every case on the subject to this date. The principles declared in that case are not here disputed, but, as we understand the contention of counsel for defendants, it is claimed that the instant case presents an entirely different situation. It is contended by counsel for defendants that, plaintiff having taken this series of notes which show upon their face to have been given for one consideration and as one transaction with two of them past due, if the law charged the purchaser with notice of any defect in the consideration of the two notes overdue, it will also charge him with like notice of any defect or want of consideration in the notes not yet due. The exact question seems never to have been before this court. Prior to the adoption of the Negotiable Instruments Law by the various states of the Union, there seems to have been a divided opinion on the question. Texas, in particular, in a number of cases, has sustained defendants' contention. But all of these cases that we have been able to find were written prior to the adoption of the Negotiable Instruments Law. In line with this holding. the appellate courts of Texas also held that circumstances sufficient to put a prudent man upon inquiry of a defect in the transferror's title were sufficient to defeat one's claim to be a ho'der in due course. This was a minority rule, and whether any courts of the American Union will continue to follow that rule after the adoption of the Uniform Negotiable Instruments Law, and particularly a provision similar to section 7726, C. O. S. 1921, remains to be seen.

Counsel for defendants cites 3 R. C. L. 1048, and 8 C. J. 478, in support of his posi-

tion. The citation from R. C. L. unqualifiedly sustains the position. The rule announced in the text is supposed to be based upon certain cases cited in a note at the foot of the page. An examination of these cases discloses that none of them sustain the rule. The Corpus Juris citation states that it is generally held that a purchaser, who takes a note which is not yet due with other notes overdue, all given for the same consideration, will be affected with notice as to the former, but that such may be the rule by virtue of statutory provisions. An examination of the cases, upon which this text statement is based, discloses that none of the cases except those from Texas sustain defendants' contention. Enunciations of principles of law by text-writers are most usually regarded no stronger than the adjudicated cases cited to support them.

In the case of Patterson v. Wright, 64 Wis. 289, 25 N. W. 10, the second paragraph of the syllabus is as follows:

"Where there is fraud in a transaction forming the basis of consideration for a promissory note, knowledge that another note given for the same consideration was due, or that interest on the notes remained unpaid, is not such notice as to affect the bona fides of the party purchasing the notes."

In that case, plaintiff did not purchase the one note which was overdue, but he had it in his hands for collection, knew that it was overdue, and that it was given for the same consideration as the notes which he later purchased. As to who was the owner of the note has no bearing on the question. Knowledge that the note was overdue, and was given for the same consideration as was the note which he purchased, would militate against the purchaser's position as a holder in due course, where he did not purchase the overdue note the same as if he had purchased it. In principle, that case is in point with the case at bar. In the case of Morgan v. Farmington Coal & Coke Co., 97 W. Va. 83, 124 S. E. 591, the Peoples National Bank purchased two notes which were given for the same consideration, one of which was overdue. Suit was brought upon the note acquired prior to maturity, and it was contended by the maker that the acceptance of the note not due, knowing that the other note was past due and unpaid, was such circumstance as to place the bank in the status of a purchaser of nonnegotiable paper. The court said:

"Does the fact that the bank knew that one of the notes had matured and was not paid give it notice of an infirmity in the note not due? It is well settled that to constitute notice of an infirmity in the instrument, the person to whom it was negotiated must have had actual knowledge of the infirmity, or knowledge of such facts that his action in taking the instrument amounted to bad faith. * * * The mere suspicion of an infirmity does not preclude a transferee from occupying the position of a holder in due course unless the circumstances and conditions are so cogent and obvious as to amount to bad faith."

It is particularly pointed out in the opinion that the notes show upon their face that they arose out of one transaction and were for one consideration. It also appeared on the notes that the maker had paid one installment of interest. It was said in the course of the opinion that the fact that one note was not paid at maturity would only indicate, under these circumstances, inability of the maker to pay, and would not put the bank upon the necessity of inquiry of possible defenses. The only difference in principle that could be said to exist between that case and the case at bar is that in the Morgan Case the first installment of interest on both notes had been paid. In the case at bar, such was not true, but the first two notes of the series had been paid in full. In the Morgan Case it was said that the payments of the interest installments indicated that there was no failure of consideration, and the fact that one note was not paid would only indicate, under such circumstances, inability of the maker to pay, and would not put the bank upon the necessity of inquiry of possible defenses. If there be a distinction between the cases, it only goes to the question of bad faith in taking the notes under the circumstances.

The case of State ex rel. Leecraft, State Treasurer, v. Town of Hoffman, 127 Okla. 101, 260 Pac. 12, while not directly in point, throws considerable light on the question. Some of the state's funds were deposited in the bank of Hoffman, and the State Treasurer took, as security for the deposit, five negotiable town hall bonds of the denomination of $1,000 each. The cashier of the bank was also town treasurer. The bank failed, and it developed that the bank cashier, as town treasurer, merely had possession of the bonds for the purpose of selling them for the town. At the time the bonds were received by the State Treasurer, they bore interest coupons which were past due and unpaid. The question presented to this court on appeal was. Did this fact render the bonds themselves, and all subsequently maturing coupons, dishonored paper, and subject them in the hands of the state to

all defenses good against the original holder? On that question the court said:

"It is insisted by the defendant in error that these circumstances were sufficient to put the plaintiff upon inquiry, which would have disclosed that the bank was not the owner of the said bonds. This contention is without merit. As with other negotiable paper, mere suspicion that there may be a defect of title in its holder, or knowledge of circumstances which would excite suspicion as to his title in the mind of a prudent man, is not sufficient to impair the title of the purchaser. That result will only follow where there has been bad faith on his part."

Courts have frequently used the expression that a purchaser of overdue negotiable paper is charged by reason thereof with notice of any existing infirmity in the instrument, or defect in the title of the transferror. The expression is an inapt one, and has resulted in much confusion. The law of negotiable instruments protects one who purchases such an instrument under certain conditions before maturity against defenses which might have been good against the original holder. But if one purchases a negotiable instrument after it has become due, all defenses which might have been good against the original holder are good against the purchaser, regardless of whether he had knowledge or notice of such defenses.

The overdue character of an instrument, otherwise negotiable, strictly speaking, does not, in fact, impart notice to the purchaser of an infirmity in the instrument or defect in the transferror's title. Where overdue paper is purchased, the law does not create any defenses in favor of the maker by reason of it having been so purchased, but merely permits such defenses as existed against the original holder, to be made against the purchaser. If it may be said that one who purchases overdue paper is charged with notice of such infirmities in the instrument or defect in his transferror's title as exist, such notice could amount to no more than constructive notice—a legal fiction, not knowledge of such facts and circumstances as would constitute his act of taking the underdue notes, as in this case, an act of bad faith. The facts are that plaintiff had no knowledge of the failure of consideration for which the notes were given at the time it purchased them. Plaintiff, in fact, had no notice that the consideration for the overdue notes had failed, but knew that if there existed any defenses against the original holder, such defenses could be made against plaintiff. The overdue notes were only a slight circumstance,

if they may be said to be a circumstance at all, tending to create a suspicion. The record shows that the first two notes of the series had been paid before plaintiff took the others, which on the face of things indicates that they were looked upon by defendants as binding obligations. We conclude that the evidence does not show bad faith on the part of plaintiff in taking the notes sued upon, but does show that plaintiff was a holder in due course as to such notes.

The judgment of the trial court is reversed, and the cause remanded, with directions to the trial court to enter judgment for plaintiff on the notes sued upon.

BENNETT, HERR, DIFFENDAFFER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.