GENERAL CONTRACT PURCHASE CORPORATION, A NEW YORK CORPORATION, PLAINTIFF-RESPONDENT, v. MOON CARRIER CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.

Argued October 20, 1942—Decided January 22, 1943.

For the appellant, *Edward Felt* (*Aaron Z. Schomer,* of counsel).

For the respondent, *Louis Ogust.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR. This is an appeal from a judgment against the appellant in an action upon seven promissory notes; each dated November 14th, 1937; one each due monthly from March 14th, 1938, to September 14th, 1938, inclusive.

The cause was heard by the court without a jury.

The proofs and stipluation show the following transaction:

The appellant being engaged in a general trucking business, sought to insure itself against liability and property damage in the operation of its trucks and engaged Frizzell & Company, insurance brokers, to effect such insurance for it. The result was the entering into an agreement by appellant with Frizzell & Company, whereby the latter engaged to secure such a contract of insurance for the term of one year for the sum or compensation to such brokers of $4,000. Such agreement dated November 14th, 1937, is *Exhibit D-2* and provides for the payment of the compensation of $4,000 to Friz-

zell & Company, as follows: "The sum of $800 herewith
and the sum of $320 on the fourteenth day of each month
until the sum of $3,200 shall have been paid in full, and such
other sums as herein set forth. As collateral security for
the payment thereof assured (Moon Carrier Corporation)
agrees to secure promissory notes for the above amount pay-
able as set forth above." Thereupon the respondent paid to
Frizzell & Company $800 in cash and executed and delivered
to it ten promissory notes of $320 each, dated November
14th, 1937, and payable, consecutively, from one to ten
months after date. Therewith the cash payment of $800 made
up the total of $4,000. Frizzell & Company effected such
insurance through policy No. 44-20218 of the Pennsylvania
Casualty Company dated November 24th, 1937, and running
for the period of one year to November 14th, 1938.

The policy of insurance called for a total annual premium
of $3,859.46.

The notes executed and delivered by the Moon Corporation
to Frizzell & Company under the foregoing agreement were
in the usual form of promissory notes but each contained the
following acceleration provision:

"This note is one of a series of ten notes of even date and
if this note or any of the series of notes is not paid at maturity
of each respective note at the time and place specified the
entire unpaid amount of said notes shall become due and
payable forthwith at the election of the holder of the notes."

Frizzell & Company had a financing agreement with the
respondent, General Contract Purchase Corporation, dated
March, 1935 (*Exhibit D*-1).

By an undated assignment, evidently subsequent to the
aforesaid installment contract, of November 14th, 1937
(*Exhibit D*-3) but prior to any of the series of notes therein
referred to becoming due, Frizzell & Company assigned the
said contract to respondent.

The pertinent language of such assignment is:

"For value received, the undersigned does hereby sell,
assign and transfer to General Contract Purchase Corpora-
tion, its successors and assigns, his, its or their rights in and
to the contract attached hereto by and between Moon Carrier

Corporation, dated November 14th, 1937, and authorizes said corporation to collect the amounts due thereunder and give receipts and acquittance therefor."

Simultaneously with the execution and delivery of said assignment there was turned over and delivered to respondent-assignee the contract of November 14th, 1937, (*D*-2), the original insurance policy (of which Frizzell & Company always had had possession), and the series of ten notes, endorsed over by Frizzell & Company. All of this appears by letter from Frizzell & Company to respondent, dated November 24th, 1937 (*Exhibit P*-11).

In a letter dated December 11th, 1937, from respondent to appellant (*Exhibit D*-4) the transaction between Frizzell & Company and respondent is characterized as "The deferred payment contract which you signed in connection with the insurance written through the above (Frizzell & Company) has been purchased by us."

Thereafter three of this series of notes due December 14th, 1937, January 14th, and February 14th, 1938, were paid to respondent by appellant. Prior to each of these payments an "invoice" was forwarded by the respondent to appellant calling attention "that payment is due on your contract as show below" (*Exhibits D*-6, 7, 8). In each case the contract below is designated as "Contract with Insurance Premium Financing. For 705 G. P. 35059" which is the same as referred to in respondent's letter to appellant of December 11th, 1937 (*Exhibit D*-4) before referred to.

In February, 1938, Frizzell & Company went into bankruptcy.

On March 28th, 1938, the insurance carrier canceled the policy of insurance. The proofs give no reason for so doing.

The action on the remaining seven notes was commenced June 23d, 1941.

The prominent and decisive question raised below was whether or not the notes sued upon were taken by the plaintiff-respondent in due course. This was decided adversely to the appellant and is properly raised before us by sufficient grounds of appeal.

We have reached the conclusion that the trial court fell into error.

The facts hereinbefore stated are not in dispute.

Beyond question the plaintiff-respondent had notice at the time that the notes were endorsed and delivered to it that they were subject to an infirmity in that a failure of consideration might and could arise.

Such a failure, partial or total, was fully contemplated by the agreement of November 14th, 1937, by the following paragraphs:

"4. In default by assured in the payment of any of the sums herein directed and agreed to be paid by assured to Frizzell & Company, Frizzell & Company is hereby authorized and empowered in the name of and on behalf of the assured to cancel and cause to be canceled the policies of insurance issued and placed as aforementioned and to receive the return premium on such policies so canceled and apply the same against the indebtedness due Frizzell & Company," and again,

"8. Notwithstanding any of the provisions of the foregoing, it is understood and agreed that in the event of the cancellation of the policies aforementioned, whether by voluntary act of the insurance carrier, or at the request of Frizzell & Company or at the request of the assured the sole and only obligation remaining upon Frizzell & Company is to pay itself any indebtedness due by assured and remit any excess, if any, to assured.

"9. Assured agrees that as and when Frizzell & Company places any of the above named insurance Frizzell & Company has earned and is entitled to receive the usual full commission and service charges and fees payable to Frizzell & Company on said insurance and in event of the cancellation thereof, no matter by whom, or how caused, assured will pay Frizzell & Company any unpaid balance of annual commissions and service charges and fees not received or paid to Frizzell & Company."

Again, from the "Premium Financing Agreement" (*Exhibit D*-1) between Frizzell & Company and the plaintiff-respondent it is readily deducible that plaintiff-respondent

in its transactions with Frizzell & Company contemplated exactly such a situation as here and in case of diminution of consideration makes Frizzell & Company responsible therefor.

At the time of the cancellation of the insurance policy the earned premium thereon was $1,416.81 and defendant-appellant's payments to Frizzell & Company and plaintiff-respondent amounted to $1,760.

If the annual premium of $3,859.46 had been paid in full, the rebate, under the terms of the policy, would have been $2,442.65.

As to any rebate being paid or to whom paid or, what, if anything, was at that time due to the insurance carrier or under the terms of the contract (*Exhibit D-2*) is not disclosed by the proofs.

It is apparent that the notes were not taken in due course; that they were subject to a failure of consideration of which the respondent had full notice and which it could have averted as the assignee of Frizzell & Company. On their face the notes were negotiable but, in fact, such negotiability was limited by the terms of the contract.

The rule is that the "purchaser of a negotiable instrument is unaffected by collateral agreements of which he has no notice, and if a bill or note makes no reference to collateral securities or agreements, the purchaser is not bound to make inquiries concerning the possible existance or nature of the same. On the other hand, where a bill or note refers to or is accompanied by a collateral, contemporaneous, agreement, or the purchaser has actual knowledge of the same he takes subject to its contents or conditions." 10 *C. J. S.*, § 333, title "Bills and Notes."

It is fundamental that a defect in title of the original payee, through total or partial failure of consideration must be known to the endorsee, or he must have notice at the time he takes the instrument. *Allaire* v. *Hartshorne*, 21 *N. J. L.* 665.

The plaintiff-respondent took the executory contract and collateral notes subject to all equities and defenses between the original parties. 5 *C. J.*, § 150; 6 *Id.*, § 114.

The judgment under review is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 14.