20 N.J. Super. 577 (1952)
90 A.2d 524
MELVIN B. CRAMER, PLAINTIFF,
v.
RUSSELL WEITH, FRANK L. TWITTY AND ROBERT L. TWITTY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 9, 1952.
*578 Mr. Louis M. Mallin, attorney for plaintiff.
Mr. Irving I. Jacobs, attorney for defendants Twitty.
HANEMAN, J.S.C.
On August 17, 1949 the defendants, Frank L. Twitty and Robert L. Twitty, instituted a suit in the Atlantic City District Court against the plaintiff, Melvin B. Cramer, on two of a series of nine negotiable promissory notes.
Thereafter, plaintiff instituted this action, alleging, inter alia, that he did not have an adequate remedy at law, that unless said action be stayed and the defendants enjoined from transferring or assigning the outstanding notes, as well as a certain chattel mortgage hereinafter adverted to, there would arise a multiplicity of suits, and that the promissory notes and the chattel mortgage might find their way into the hands of innocent purchasers. He further alleges that both the promissory notes and the chattel mortgage are tainted with usury and therefore demands the relief accorded by R.S. 31:1-3. Pursuant thereto, the district court action was enjoined.
Defendants, by way of counterclaim, seek: (1) to obtain a judgment on the six last due notes of the above referred to series, in the total sum of $5,000, with interest and costs, and (2) to foreclose the chattel mortgage to which reference is above made.
*579 I find the facts in connection herewith to be as follows:
On or about May 5, 1945 the plaintiff, finding himself in some financial difficulty, borrowed certain sums of money from the defendant Russell Weith, for which the plaintiff was obliged to pay a premium or bonus. This loan was to be repaid by September of 1945. On September 5, 1945 the said plaintiff not having paid to Weith the full amount of the above referred to loan, borrowed additional money, for which he again paid a bonus or premium, and executed and delivered to the said Weith a chattel mortgage in the sum of $10,000, which sum included the balance due on the original loan, the premium or bonus, and the newly advanced money. The affidavit of the mortgagee in said mortgage reads in part as follows:
"The sum of Ten Thousand ($10,000) Dollars as evidenced by two checks; one certified in the amount of $7,500, drawn on the Brooklyn Trust Co., dated August 30, 1945, and signed by Pauline Isaacs, Attorney, and endorsed by Pauline Isaacs to Clara Fishman and endorsed by Clara Fishman to Melvin B. Cramer; and the other check in the amount of $2,500, drawn on the Brooklyn Trust Co., dated September 4, 1945, and signed by Pauline Isaacs, Attorney, to the order of Clara Fishman and endorsed by Clara Fishman to Melvin B. Cramer  which $10,000 was loaned by Russell Weith, the mortgagee, to Melvin B. Cramer, the mortgagor, on the 4th day of September, 1945, to be repaid by the said Melvin B. Cramer as set forth in the foregoing mortgage; out of which said sum is to be paid and cancelled a present chattel mortgage in the sum of $3500, now held by Russell Weith on the goods and chattels on the premises mentioned in the aforesaid mortgage."
The plaintiff not having paid in full the amount due on said mortgage, delivered to Weith, upon his demand, a series of nine promissory notes, all dated October 24, 1947, in the following amounts and payable on the following dates:

 $750 payable on July 15, 1948
 750 payable on August 15, 1948
 1000 payable on September 15, 1948
 750 payable on July 15, 1949
 750 payable on August 15, 1949
 1000 payable on September 15, 1949
 750 payable on July 15, 1950
 750 payable on August 15, 1950
 1000 payable on September 15, 1950

*580 Each of said notes, except for the amount payable and the due date thereof, was identical. One of said notes reads as follows:
 "750.00 October 24, 1947
On July 15, 1948 I promise to pay to the order of Russell Weith Seven Hundred Fifty ($750.00) Dollars payable at 1119 Boardwalk, Atlantic City, N.J. Value Received Interest at 6% per annum.
 (over)
 Melvin B. Cramer."
The reverse side of said notes, as they now appear, read as follows:
"This note is given as evidence of part of the Ten Thousand ($10,000.00) Dollar loan made on the day of 1946 and now reduced to Seven Thousand Five Hundred ($7,500.00) Dollars. Upon default of the payment of this note, the entire unpaid balance, as evidenced by the other notes executed this day, shall become due and payable immediately.
Pay to the order of Frank and Robert Twitty.
Russell Weith."
It is to be noted in passing that the first three of said notes, due July 15, August 15 and September 15, 1948 respectively, read in part on the reverse side as follows:
"loan made on the ____ day of ____ 1946."
The last six notes read as follows:
"loan made on the 5th day of September, 1945."
The words "5th" and "September" are inserted in ink, and the figure "5" in the year "1945" is written in ink over a typewritten "6."
The said Weith, in turn, finding himself in financial difficulty in June 1949, went to the defendants Twitty for the purpose of obtaining a loan from them. It was testified by the said Weith and Frank L. Twitty that the said Twitty made the loan on June 10, 1949 and then received from the said Weith as collateral security the above referred to series *581 of nine notes and an assignment of the above referred to chattel mortgage.
It is again to be noted in passing that the acknowledgment on the assignment of the chattel mortgage was dated June 25, 1949 and that the said assignment was recorded June 27, 1949.
The total amount allegedly loaned by the said Twittys between June 8, 1949 and June 23, 1949 was $4,913.50. In addition, the said Twittys issued a series of purchase orders to firms authorizing them to ship merchandise to the said Weith, but upon the credit of said Twittys. These orders covered a period from June 8, 1949 to June 17, 1949 and totaled $3,228.36.
On June 27, 1949, said Weith being a resident of the State of New York, apparently finding himself in insurmountable financial difficulties, made an assignment for the benefit of creditors in that state.
I find as a fact that the defendants Twitty knew of the financial embarrassment of the said Weith at the time the alleged assignment of the chattel mortgage and the endorsement of the promissory notes were made by him. Although Frank L. Twitty disclaimed any knowledge of the original transaction between Cramer and Weith involving the chattel mortgage and the promissory notes, I am satisfied, especially from the testimony of Mrs. Frances La Touf, the now divorced wife of the plaintiff, that prior to the transfer of the said chattel mortgage and the promissory notes, she and her then husband, the plaintiff, had a conversation with the defendant Weith in the presence of the defendant Robert L. Twitty concerning the alleged bonus being charged by the said Weith. The entire testimony of the said Weith is unreliable and untrustworthy. His position shifted from an allegation that the entire transaction concerned itself with an outright legitimate loan, with a denial that any bonus or premium was charged, to an allegation that he was purchasing an interest in the plaintiff's restaurant business which, for his own purposes, he did not desire to publicly acknowledge.
*582 It becomes necessary to determine whether the defendants Twitty are holders in due course of the series of notes now held by them in order to ascertain whether the defense of usury is available to the plaintiff.
The Negotiable Instruments Law, R.S. 7:2-52, as it is here pertinent, provides as follows:
"II. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
"III. That he took it in good faith and for value;
"IV. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."
Insofar as the first three notes are concerned, due respectively July 15, August 15 and September 15, 1948, there can be no question that the defendants Twitty are not holders in due course, since they did not become holders before said notes were overdue, and they had knowledge that they had been previously dishonored.
Passing the question of whether the failure to pay the first three of this series of notes, in view of the legend on the reverse side of each of said series, caused an automatic maturity of all nine of said notes, it becomes necessary to ascertain whether the said Twittys met the requisites of subsections III and IV of R.S. 7:2-52 to acquire the status of holders in due course.
R.S. 7:2-56 reads as follows:
"7:2-56. What constitutes notice of defect
To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."
In Rice v. Barrington, 75 N.J.L. 806 (E. & A. 1908), the court said as follows:
"* * * proof of circumstances calculated merely to arouse suspicion will not defeat recovery on a negotiable note taken for value *583 before maturity. Bad faith  i.e., fraud, not merely suspicious circumstances  must be brought home to a holder for value whose rights accrued before maturity in order to defeat his recovery on a negotiable note upon the ground of fraud in its inception or between the parties to it."
See also Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952); Hudson County, &c., Bank v. Alexander Furs, Inc., 133 N.J.L. 256 (E. & A. 1945).
In order to determine the bona fides of the defendants Twitty the aggregate circumstances involving this transaction and the transfer of title of the promissory notes must be considered. Eastern Acceptance Corp. v. Kavlick, 10 N.J. Super. 253 (App. Div. 1950). In so assaying the facts it is to be remembered that three of the entire series of nine promissory notes, at the time they were allegedly transferred to the defendant on June 10, 1949, had been due and unpaid from July 15, August 15 and September 15, 1948 respectively. Although the six upon which recovery is here sought were not overdue, the first three were overdue and the Twittys had notice of the default. On the face of said notes appears the word "(over)." On the rear of said notes appears the legend above referred to, making reference to a "loan made on the 5th day of September, 1945." On the same day, supposedly, upon which these defendants Twitty received the nine notes, they received an assignment of the chattel mortgage, which contained the affidavit above set forth.
In General Contract, &c., Corp. v. Moon Carrier Corp., 129 N.J.L. 431 (E. & A. 1942), the court held that where a note refers to or is accompanied by a collateral, contemporaneous, agreement, or the purchaser has actual knowledge thereof, he takes subject to its contents or conditions. The defendants Twitty, therefore, upon the receipt of the promissory notes with the legend on the reverse side, and the chattel mortgage, accepted the same subject to the terms and conditions of said chattel mortgage and the collateral agreement. In addition, it is to be recalled that Frank L. Twitty testified that he was not concerned with the transaction, but *584 left the details to his New York lawyer who, in answer to the question "What did you think of these notes?" said "Well, if they are not good we will send this man to jail." They asserted that no further inquiry was made of the defendant Weith or the plaintiff as to the consideration or status of the notes, although the said Twittys then knew that Weith was financially embarrassed and that three of the series of notes had been in default for upwards of nine months. Frank L. Twitty had a very vague recollection of any discussion with the defendant Weith about the default of the notes at the time of the transfer, but had knowledge thereof. He testified:
"Vaguely it does come back to my memory that there was something said about some note in default, and if I remember correctly he made the statement that Mr. Cramer's business flourished in the summer months and they didn't do anything in the winter months, due to seasonal market,  something like that,  is why these notes had not been paid up, but they would be brought right up, he was certain of that."
Again it is to be noted that the notes in question became due in the summer season when, according to the testimony, plaintiff had his greatest earnings, and would be made current.
Adding all of the aggregate circumstances together, I am satisfied that they go far and beyond that which would be calculated merely to arouse suspicion, and actually are demonstrative of bad faith on the part of the defendants Twitty. This results, of course, in the conclusion that they are not holders in due course, their conduct being such as is violative of R.S. 7:2-52, III and IV, above referred to.
In First National Bank at East St. Louis v. Street Imp. Dist. No. 326 of City of Little Rock, Ark., 48 Fed. Supp. 225 (D.C., E.D. Ark., W.D. 1943), the court said:
"It is needless to discuss the general law as to `due course' and who are innocent purchasers. This case falls within the holding of the Supreme Court of Arkansas, in the case of Old National Bank v. Marcy, 79 Ark. 149, 95 S.W. 145, 9 Ann. Cas. 339, * * *, where it is said: `If it appears on the face of notes that they form a series *585 and were given for the same consideration, the fact that default has been made as to the payment of one or more notes fixed the transferee with notice of defenses against the others not yet due.'
"* * * The holding in the case of Old National Bank v. Marcy, supra, is in line with practically all of the courts of last resort of the States on this question, only the Oklahoma Supreme Court holding differently. Hobart M. Cable Co. v. Bruce * * * supra" [135 Okl. 170, 274 P. 665, 64 A.L.R. 451].
See also 161 A.L.R. 1211.
I find that usury was clearly established by a decided preponderance of the evidence, Altman v. Altman, 8 N.J. Super. 301 (Ch. 1950), and in view of the conclusion that the defendants Twitty are not holders in due course, this defense is available to plaintiff.
Insofar as the chattel mortgage is concerned, I find as well that it is tainted with usury, and as assignees, the defendants took subject to all of the defenses available to the mortgagor.
In view of the foregoing, it is therefore here held that since the loan for which the promissory notes and the chattel mortgage were given was one transaction, and both were tainted with usury, the said Twittys may recover thereon the principal of said loans, less any premium or bonus paid therefor, and are not entitled to any interest thereon.
Judgment will be entered accordingly.