HARRELL *vs.* BROXTON.

1. There was enough evidence in this case to warrant the jury in finding that the consideration of the notes sued on had failed, and in concluding that the plaintiff took them with notice of dishonor.
2. If one receives a note after it is due, the non-payment at maturity is notice to him of dishonor, and he takes it subject to all the equities existing between the original parties thereto ; and if there be several notes, constituting one transaction, but due at different times, the fact that one is overdue and unpaid is notice to the purchaser of all to put him on his guard as to each.

February 26, 1887.

Promissory Notes.   Consideration.   Notice.   Before Judge SIMMONS. Dooly Superior Court. March Term, 1886.

Reported in the decision.
v 78-9

MARTIN & COCHRAN, for plaintiff in error.

JORDAN & WATSON; W. L. GRICE, for defendant.

BLANDFORD, Justice.

The plaintiff brought his action against the defendant upon two promissory notes, one for $100, due December 1st, 1882, and one for $160, due October 1st, 1883, both dated August 18th, 1882. The defendant filed a plea of failure of consideration. The jury returned a verdict for the defendant upon the issue formed upon this plea. The plaintiff moved the court for a new trial, upon the ground that there was not sufficient evidence to sustain the verdict. The court overruled the motion, and this is assigned as error.

Upon the trial of the case, the defendant was sworn as a witness, and he testified that the consideration of the notes was the purchase of one engine from Levi H. Harrell, the payee of the notes; that the engine was purchased for the purpose of ginning cotton; that the same was worthless and would not gin more than forty or fifty pounds of cotton per day; that he had a skilled machinist to try to run it, but he failed; that he had to buy a new engine; that the whole transaction was had with L. H. Harrell, the payee; that he met the plaintiff frequently, but he never said anything about the notes and his owning them, nor did he demand payment thereof; that at the time of the maturity of the $100 note, Watson, defendant's counsel, had it; that he could not say that the plaintiff did not own the $160 note before it was due; that the engine was fired up and run, but did not gin; that when he bought the engine, nothing was said about warranting the same; that it was fired up and run, but no cotton was put in; that he tried it three or four days and could do nothing with it; that he saw L. H. Harrell at Watson & Lewis's, at Hawkinsville, and afterwards at the association,

and told him if he would come and make it good, he would have nothing more to say; that he had notified him before that he could not make it work; that he offered him $50 and the engine to take it back; that Harrell dodged the defendant when he told him to come and run the engine, and finally told him he had no time to bother with it; and that the plaintiff never did tell him he owned the note, and L. H. Harrell never did tell him that plaintiff owned the note, nor any one else.

" Old man " Broxton testified that the engine was worthless for ginning. J. C. Fullington testified that he saw the engine, and it would not gin ; the boiler was four-horse power and the engine six-horse power; nothing was the matter with the engine, but the boiler was too small for the engine; he considered it worthless as it was for work; he leveled it and fixed it up, but could not make it perform when there was any cotton in the gin.

Levi H. Harrell was sworn for the plaintiff, and testified that he owned the $100 note, but that his son, the plaintiff, owned the $160 note, and had continuously owned it since before it was due. He traded it in good faith to his son for a horse; he has the horse now; he sold the engine to the defendant, but has never owned the $160 note since before maturity; he did not sue it and never gave it to Kibbee & Martin to sue; he did not give the plaintiff any notice of defence against the note. Witness owned the engine two years, and ginned all the neighborhood cotton; one year he ginned 118 bales of cotton with it, and the other, 126; he ginned three bales a day; he did not warrant it and refused to warrant it, but told the defendant what he had done; he fixed it up and showed the defendant how it would work; the plaintiff lived at the witness's house at the time the defendant bought the engine; is now married and lives near witness, and is witness's son; witness never did tell the defendant that his son owned the $160 note, or that he had traded it to his son; does not know that defendant knew it.

1. This is all the testimony submitted in the case, and the impression left upon the mind is that there was something left out; there is a lack of completeness about it. Juries are taken from the neighborhood because they are supposed to know something about the facts of the case, the maxim of the common law being *vicini vicinorum presumuntur scire;* and this maxim can be well applied to this case. The jury may have concluded, from the fact that the son lived with the father before and at the time he sold the engine to the defendant, that he knew the consideration of the note sued on, and that he also knew that the engine was worthless.

2. Furthermore, it appears that the $100 note now belongs to L. H. Harrell. It became due in 1882. The $160 note became due in 1883. The plaintiff is in possession of or was in the control of, the $100 note. He brought suit upon it in his own name, and yet it belongs to the father. It may be that the plaintiff never became the owner of the $160 note until after the $100 note was overdue; and if such was the fact, then the law is, that if the holder receives the note after it is due, its non-payment at maturity is notice to him of dishonor, and he takes it subject to all the equities existing between the original parties thereto; and if there be several notes constituting one transaction, but due at different times, the fact that one is overdue and unpaid, is notice to the purchaser of all to put him on his guard as to each. Code, §2786.

So we cannot say that there was no testimony to support this verdict, and that there is nothing upon which the jury might have founded the verdict in favor of the defendant. The presiding judge who tried the case is satisfied not to disturb the verdict; and we cannot say that there was error in his refusing to grant this new trial, and the judgment is affirmed.