JOHN H. VETTE, Appellant, v. A. G. LABARGE *et al.,* Respondents.

St. Louis Court of Appeals, December 10, 1895.

1. **Negotiable Paper:** NOTE PAYABLE IN INSTALLMENTS. A negotiable promissory note payable in installments is not deprived of its negotiability by the maturity of an installment, if this be paid; *sed aliter,* if any installment is due and unpaid. In the latter case a purchaser of the note takes it subject to all equities, though it contains a false indorsement of the payment of the matured installment.

2. **Chattel Mortgages:** EFFECT OF TRANSFER OF DEBT. A chattel mortgage is but an incident of the debt secured by it; and when it is void *inter partes* for usury, it remains so as to any one who acquires a note secured by it with notice of equities.

3. **Practice, Trial:** TRIAL BY COURT: STATEMENT OF LAW AND FACTS. Under our present statute (R. S., sec. 2135) a trial court to which an action is submitted should state, first, its findings of facts, and then the conclusions of law thereon. But its judgment will not be disturbed for failure to state such findings and conclusions separately, if all the material facts are fully found by it, and the judgment rendered follows necessarily therefrom.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*James R. Kinealy* for appellant.

*Martin, Bass & Carr* for respondents.

BIGGS, J.—The action is replevin to recover the possession of certain household furniture. The defendants gave a forthcoming bond, and retained the property. The plaintiff claimed under a chattel mortgage, executed by the defendants to secure the payment of a negotiable note in favor of the Collateral Loan Com-

pany for $243.50, bearing eight per cent interest, payable at the maturity of each of the installments hereinafter named.    The note was dated August 12, 1893, and by its terms the principal was payable in installments as follows, to wit:   On September 12, 1893, $15; on October 12, 1893, $15; on November 12, 1893, $15; on December 12, 1893, $15; on January 12, 1894, $15; on February 12, 1894, $15; on March 12, 1894, $15; on April 12, 1894, $15; on May 12, 1894, $15; on June 12, 1894, $108.50.   On the back of the note were the following indorsements, to wit: "Without recourse, Collateral Loan Company, per Robert W. Staley, Secretary," and " Paid on principal by cash, $75.   January 30, 1894, interest paid to January 12, 1894." On a trial *de novo* in the circuit court, the cause was submitted to the court without a jury.   The plaintiff read in evidence the note and mortgage and the order of delivery issued by the justice, and the return of the constable showing the possession of the property in the defendants, and rested.   The defendants then introduced evidence which tended to prove that the note read in evidence was a renewal of another note, given by them to the Collateral Loan Company for money borrowed the latter part of December, 1891; that the defendants only received $300 on the loan, and that from January, 1892, to November, 1893, they had paid on the debt in monthly installments of $15 each the aggregate sum of $345, and interest on each installment at the rate of eight per cent per annum, and that the last payment made was in November, 1893.   It also appeared that the note here was a second renewal note, the first having been given in December, 1891.   The rebuttal evidence was to the effect that plaintiff bought the note from the collateral company on January 30, 1894, and paid for it $150; that the indorsements were on the note when he bought it, and that he knew noth-

ing about the circumstances attending the original loan or the subsequent transactions concerning it. It was further shown that the original loan was negotiated by one John W. Staley, who professed to act as the agent of the defendants, and that he charged the defendants a fee of $80, which the Collateral Loan Company, under a written order from the defendants, paid to him out of the loan; that Staley negotiated the first and second renewals of the loan, for which he charged, respectively, $77.50 and $56, which the Collateral Loan Company, under like orders, paid out of the money paid to it by the defendants. It also appeared that Staley is a brother of Robert W. Staley, the secretary of the Collateral Loan Company, and that he has a desk in the office of the company. According to his testimony and that of his brother, he has no interest in the company, neither has the company any interest in his individual business, but he is engaged in negotiating loans from the company for his clients, and, in consideration of a stipulated fee, he in each case examines the security offered as to its title and value, and, if found satisfactory, recommends and guarantees the loan and prepares the necessary papers.

At the request of the plaintiff the court gave the following instruction:

"The court declares the law to be that, if the court finds from the evidence that the plaintiff in this case is an innocent *bona fide* purchaser for value before maturity of the note read in evidence, then the plaintiff holds the mortgage securing said note, and read in evidence, upon the same terms and conditions as he holds the note, and the court will disregard all evidence as to the consideration of the note read in evidence, and will disregard all testimony of the rate of interest or amount paid on the indebtedness evidenced by said note, and secured by said chattel mortgage."

The following instruction was refused:

"The court declares the law to be that, under the law and the evidence in this case, the finding of the court must be in favor of the plaintiff."

Thereupon the cause was submitted, and the court, at the request of the plaintiff, made the following findings of fact and its conclusion of law thereon, to wit:

"The following may be taken as the finding of facts, as requested by the plaintiff, under section 2135 of the Revised Statutes, and the declarations of law under which the judgment is rendered.

"The mortgage note in question was payable in installments, and, at the time it came into the hands and ownership of the plaintiff, five of the installments were past the dates of their respective maturities and two of them were unpaid, and for that reason the note was dishonored and the plaintiff was not an innocent indorsee thereof for value before maturity, and took the notes and security subject to the same equities that existed against it in the hands of the indorser. The court is satisfied from the evidence that the transaction between the Collateral Loan Company and John W. Staley and the defendants, whereby a certain portion of the money nominally borrowed by defendants from the loan company was apparently paid by that company to John W. Staley as for services purporting to have been rendered by him for defendants, was but a device to mask the real transaction between the parties, which was the taking of usurious interest by the loan company from defendants in violation of the statute law of this state; that usury was thereby exacted from defendants, and, therefore, the security given by the chattel mortgage in question became void and of no effect.

"The evidence shows that the manner of doing business, as this transaction was conducted, was

adopted after the act of April 21, 1891, in reference to usurious interest went into effect, and it appears to fit every phase of that statute so minutely that it is impossible to believe otherwise than that it was contrived to evade the law.

"Rules of evidence like all other rules of law are adapted to our common sense. There is nothing in the law of evidence so technical as to require the trier of fact in a law suit to reach a conclusion which his judgment as an individual repudiates, or, as has been said by a learned judge, one can not believe as a man and doubt as a juror. It is as logical to reason the cause from the effect, as it is to reason the effect from the cause. The fact that this mode of doing business offers such a complete method of evading the law, and the fact that it was adopted soon after the law went into effect, are facts in strong evidence that the one was made for the other.

"This does not mean that the witnesses for the plaintiff testified falsely when they undertook to give the details of this transaction. They doubtless told exactly what occurred, and yet everything was so apt, and such an effective foil to every point of the statute, that it forces the conviction that each acted his part according to a well arranged program and with an eye on the act of April 21, 1891. Such acting does not deceive anybody else, and there is no reason why it should deceive courts.

"Judgment for defendants for possession of property and one cent damages."

It is insisted that the inquiry into the consideration of the note ought not to have been permitted, since there was no evidence tending to impeach the position of the plaintiff as a *bona fide* holder without notice. This position is not tenable. There was evidence tending to prove, and the circuit court so found, that,

at the time the plaintiff bought the note, two of the installments were overdue and unpaid. Under such circumstances he took the note subject to all equities; for it is the established law that, when the principal of a note is payable in installments, a failure to pay any one of them when due makes the note dishonored paper, and a subsequent transferee who takes it in that condition takes it subject to all equities. *Vinton v. King*, 4 Allen, 562; *Field v. Tibbetts*, 57 Me. 359; *McCorkle v. Miller*, *ante*, page 153. The reason of this rule, as stated by us in *McCorkle v. Miller*, *supra*, is "that, where one or more of the installments remain due, the presumption arises that there is some valid reason for the failure to pay, which, if established, would likely go to the defeat of the entire debt, and thus all subsequent purchasers or holders of the discredited paper are put on inquiry." The fact, that the note of its face showed that all installments had been paid, is no protection to the plaintiff. According to the finding of the circuit court, the defendants made no payments after November, 1893. Their subsequent default discredited the note, from which it could not be relieved by the indorsement of a fictitious or unauthorized credit. It follows of necessity that a purchaser of such a note buys at his peril. If the past installments have been actually paid, he takes as a *bona fide* purchaser without notice; but if they have not been paid, he must stand in the shoes of his vendor. Neither is there anything in the suggestion, that the plaintiff had not received or demanded usurious interest. The mortgage was but an incident to the note (*Hagerman v. Sutton*, 91 Mo. 519) and, as to it, the plaintiff must likewise stand in the place of the Collateral Loan Company. As there was evidence to sustain the finding of the circuit court that the company had received and exacted usury, the

lien of the mortgage was invalid in its hands, and, as the plaintiff took the note subject to all equities, he likewise took the mortgage subject to all of its infirmities.   Sess. Acts, 1891, p. 171.

Lastly, complaint is made that the findings of fact and the conclusions of law are not made separately as required by section 2135 of the Revised Statutes of 1889. The section reads: "Upon the trial of a question of fact by the court, it shall not be necessary for the court to state its findings, except generally, unless one of the parties thereto request it with a view of excepting to the decision of the court upon the questions of law or equity arising in the case, in which case the court shall state in writing the conclusions of fact found separate from the conclusions of law." The findings of the court were informal, in that the statement of the facts found and the conclusions of law thereon were not separately stated. A similar statute was enacted in 1849 (Sess. Acts, 1849, p. 90), but was dropped out of the revision of 1855. The law was reenacted in its present form in 1889. Construing the act of 1849, the supreme court held in the case of *Smith v. Harris*, 43 Mo. 557, that the statute contemplated that a finding of the facts should first be made, which should be followed by the conclusions of law thereon. But the court ruled that, if all the material facts are fully found and the judgment given is the necessary result of such facts, the judgment will not be disturbed by reason of the fact that the conclusions of law and fact are not so separately stated. In the case at bar two leading facts were found, that is, that, at the time the plaintiff purchased the note, two installments were overdue and unpaid, and, further, that the Collateral Loan Company had received and exacted from the defendants usurious interest on the indebtedness. With these findings other inquiries of fact became immaterial,

and from them the judgment of the court necessarily followed. Because each finding of fact was followed by the conclusion of law thereon can not, under the decision of the supreme court, invalidate the judgment. The Kansas City court of appeals has expressed substantially the same views in the case of *Nichols v. Carter*, 49 Mo. App. 401.

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concur.