19990. BEASLEY HARDWARE COMPANY v. STEVENS.

DECIDED OCTOBER 1, 1930.

Bruce D. Dubberly, H. H. Elders, for plaintiff in error.

A. S. Way, contra.

STEPHENS, J. F. L. Stevens, as transferee, instituted suit against Beasley Hardware Company, as maker, upon six promissory notes, all of the same date, namely, October 26, 1926, and aggregating the principal sum of $360, maturing on successive dates, the second, third, fourth, fifth, sixth, and seventh months after date, executed by Beasley Hardware Company, and payable to the order of Brenard Manufacturing Company, at Iowa City, Iowa. The defendant pleaded that the notes were given to the Brenard Manufacturing Company pursuant to a contract between it and the payee, by which the defendant, for the consideration of the notes,

purchased of the payee certain radio sets and became the agent for the payee to sell radio sets within the defendant's territory; that the radio sets had proved entirely worthless, and for this reason the consideration for the notes had totally failed; and that the plaintiff, by reason of having purchased and acquired the entire series of notes after the maturity of the first one of the series, was not a holder in due course.

The court, after hearing the evidence, directed a verdict for the plaintiff in the amount of the notes which on their face had not matured at the time when the defendant claimed the plaintiff became the transferee by indorsement. The verdict was directed in the amount of all the notes except the one with the earliest maturity date. The defendant moved for a new trial upon the general grounds and upon the special ground that the court erred in directing a verdict for the plaintiff. The defendant's motion for a new trial was overruled, and the defendant excepted.

The evidence was sufficient to authorize the inference that the radio sets were entirely worthless and not suited for the purposes intended, and that the plaintiff purchased, and became the transferee of, the notes after the first note of the series had become due, but before the maturity dates named in the remaining notes of the series. In none of the notes was there a clause accelerating maturity upon the nonpayment at maturity of any of the other notes. Each note, as respects its date of maturity, was unconditional. Each note, with the amounts and dates of maturity eliminated, reads as follows:—"Glennville, Ga. 10/26/26. For value received we promise to pay to the order of the Brenard Manufacturing Company . . at Iowa City, Iowa, payable . . . In case of default in payment I agree to pay payee's reasonable attorney fees. (Signed) Beasley Hardware Co. by J. H. Beasley." There was nothing on the face of any one of the notes expressly indicating that they constituted a series of notes arising out of a single transaction, and that their principal amounts in the aggregate represented one consideration. However, all the notes purport on their face to have been executed at the same place, on the same date, by the same maker, and to the same payee. It appears, from the evidence, that the Brenard Manufacturing Company was a manufacturing company which sold radio sets and was located in Iowa City, Iowa, and that the plaintiff, F. L. Stevens, lived in

the same city, was acquainted with the Brenard Manufacturing Company, and was engaged in the business of purchasing negotiable paper. According to his own testimony, he was "acquainted with the Brenard Manufacturing Company of Iowa City, Iowa," and knew that it was a partnership, and who composed it. It was therefore clearly inferable that he, who, with this knowledge, was engaged in the business of buying commercial paper for investment, knew the nature of the business of the Brenard Manufacturing Company, which was to sell radio sets and other goods to customers and take purchase-money notes therefor. It is therefore inferable that the plaintiff, when purchasing from the Brenard Manufacturing Company the notes sued on, which were similar in every respect except as to the principal amounts and the maturity dates, and were due serially, knew that the notes were taken by the Brenard Manufacturing Company for purchase-money in the sale of its products, and that they were serial notes executed in one transaction.

The defendant, who is the plaintiff in error, insists that the plaintiff, as transferee, was not a holder in due course, and that, although, at the time of the execution of the note sued on, Georgia had adopted the negotiable-instruments law, section 4287 of the Civil Code of 1910 was still in force. This section reads as follows: "If the holder receives it after it is due, its non-payment at maturity is notice to him of dishonor, and he takes it subject to all the equities existing between the original parties thereto; and if there be several notes constituting one transaction, but due at different times, the fact that one is overdue and unpaid shall be notice to the purchaser of all, to put him on his guard as to each." The plaintiff insists that this code-section has been superseded and the rule announced therein has been repealed by the negotiable-instruments law, and that under the negotiable-instruments law the plaintiff, notwithstanding he purchased the entire series of notes after one of the notes of the series had become due, was nevertheless, as to the remaining notes which had not matured, a purchaser in due course. If the rule announced in section 4287 of the Civil Code of 1910, whether by virtue of the authority of the section itself or of the negotiable-instruments law, is still in force, it can not be held as a matter of law that the plaintiff was the holder in due course of the notes sued on, and the court erred in directing a

verdict for the plaintiff: but if the rule announced in that code-section has been repealed and is not now in force, the plaintiff, in purchasing the remainder of the notes of the series before any one of them was due, was a holder in due course of the notes, and the verdict for the plaintiff in a sum representing the amount due on these notes was properly directed.

Sections 52 to 59, inclusive, of the negotiable-instruments law (Ga. L. 1924, pp. 137, 138 et seq.; Michie's Code (1926), § 4294), define a holder in due course of a negotiable instrument. They define the status of a holder of a negotiable instrument and the character of notice which deprives him of the status of a holder in due course. Whether these sections of the negotiable-instruments law operate to repeal section 4287 of the Civil Code of 1910 which defines the status, as respects one situation, of the holder of a negotiable instrument, they are nevertheless exhaustive as respects the definition of what constitutes a holder in due course. The negotiable-instrument law contains no definition of what constitutes a dishonored paper, and to this extent it is not exhaustive, and it contains no express provision applicable to the situation of a holder of a series of notes which constitute one transaction, where the holder acquired the notes after one of them had become due. See article 7 of the act. In 8 C. J. 48, it is stated that "in so far as it speaks, the statute is conclusive and where the context so requires, inclusive. In other words, the act, in some respects, is so complete a codification of the law as to justify the application of the maxim, expressio unius est exclusio alterius. However, it expressly provides that in any case not provided for in the act the rules of the law merchant shall govern." Sections 52 to 59 of the negotiable-instruments law, therefore, supersede section 4287 of the Civil Code of 1910, except in so far as that section may be a codification of the law merchant, which is part of the common law, as respects a situation not provided for in the negotiable instruments law. By the same reasoning it would seem that these sections of the negotiable instruments law would supersede sections 4286 to 4292, inclusive, of the Civil Code of 1910. This question, however, is not now presented for determination. While section 4287 of the Civil Code of 1910 as such, and as a statutory enactment, may be superseded by sections 52 to 59 of the negotiable-instruments law, it does not necessarily follow that the rule announced in the code-section has

been repealed by the provisions of the negotiable-instruments law.

If the law as expressed in section 4287 of the Civil Code of 1910 is not found in the negotiable-instruments law, either expressly or by interpretation, and is not repealed by any of the provisions of that act, it would, nevertheless, notwithstanding the exhaustive character of the negotiable-instruments law, be supplementary thereto, and constitute, together with the negotiable-instruments law, the law in force in this State applicable to negotiable instruments, provided the law as expressed in section 4287 of the Civil Code of 1910 is a codification of a rule of the law merchant, i. e., the common law as to negotiable instruments. Especially is this the case where section 195 of the negotiable-instruments law provides that "in any case not provided for in this act, the rules of the law merchant shall govern." *Schlosburg* v. *Tanenbaum,* 38 *Ga. App.* 641 (144 S. E. 804), and authorities there cited. The law merchant is part of the common law. 8 C. J. 32, and citations in note 8. The negotiable-instruments law purports to be a codification of the law merchant, or the common law with reference to negotiable instruments. 8 C. J. 33, 47, and cases there cited. It was originally drafted and recommended to the legislatures of the States by the State Boards of Commissioners Promoting Uniformity of Legislation in the United States, at a conference of the commissioners in 1896. It was proposed with a view to rendering uniform throughout the various States the law with reference to negotiable instruments. It is not supposed to be a codification of the law merchant as respects any particular jurisdiction. The act, however, when adopted in a particular jurisdiction becomes pro tanto the law respecting negotiable instruments in that jurisdiction, and supersedes the law merchant obtaining in that jurisdiction as to all matters covered by the provisions of the act. As respects any matter not covered in the act the rules of the law merchant, or common law, prevail, and the act, together with those residuary rules of the common law constituting the law of negotiable instruments, or the common law with reference to negotiable instruments, constitute the law of that State with reference to negotiable instruments. The statute being originally designed to promote uniformity in the various states of the law with reference to negotiable instruments, it is presumed that the legislature of a particular State, in adopting the act, intended, in so far as the

provisions of the act itself are applicable, to standardize and make uniform with the law of other States its own law with reference to negotiable instruments. The act should always be construed with this object in view. In Union Trust Co. *v.* McGinty, 212 Mass. 205 (98 N. E. 679, Ann. Cas. 1913C, 525), quoted in Graham *v.* Shephard, 136 Tenn. 418 (189 S. W. 867, Ann. Cas. 1918E, 804), it is stated that the act "ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony upon an important branch of the law. Simplicity and clearness are ends especially to be sought. The language of the act is to be construed with reference to the object to be attained. Its words are to be given their natural and common meaning, and the prevailing principles of statutory interpretation are to be employed. Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had heretofore been the law, . . unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different States."

The act, however, when adopted in a particular State becomes the law of that State, and, notwithstanding the sound policy which demands that the act be construed with a view to maintaining uniformity in the law of negotiable instruments throughout all the States, a provision of the act which does not apply to every situation, and which has not been given a uniform construction throughout the various States, must be construed with reference to the law merchant or the common law. The result therefore will be, that notwithstanding the uniformity of the law generally in the States which have adopted the act, the law of negotiable instruments in a particular State will not necessarily be uniform with the law of negotiable instruments in other States which have adopted the act. Any doubt, therefore, as to the meaning of any provision of the negotiable-instruments law must be solved by reference to the law merchant. Wettlaufer *v.* Baxter, 137 Ky. 362 (125 S. W. 741, 26 L. R. A. (N. S.) 804); Mechanics &c. Bank *v.* Katterjohn, 137 Ky. 427 (125 S. W. 1071, Ann. Cas. 1912A, 439); Simpson *v.* First National Bank, 94 Ore. 147 (185 Pac. 913). In a number of States, prior to their adoption of the negotiable-instruments law, it had been held as part of their common law with reference to negotiable instruments that one who purchases a negotiable instrument

after one of the installments has become due, and the purchaser of a series of negotiable instruments executed as part of one transaction, who acquires them after maturity of one note of the series, takes after dishonor. In some of these cases the contract contained no provision accelerating the maturity of the entire debt on default in payment of one of the installments, or one of the notes of the series, when due. None of these decisions are based upon the provisions of the negotiable-instruments law, or any statutory provision, but in so holding they apparently recognized the common-law rule as in force in the State. McCorkle v. Miller, 64 Mo. App. 153; Vette v. LaBarge, 64 Mo. App. 179; Vinton v. King, 4 Allen (Mass.), 562; Field v. Tibbetts, 57 Me. 358 (99 Am. D. 779); Hall v. Wells, 24 Cal. App. 238 (141 Pac. 53); McGuigan v. Abele, 78 Mich. 415 (44 N. W. 393); Hull v. Swarthout, 29 Mich. 249; Lockwood v. Noble, 113 Mich. 418 (71 N. W. 856); Masterson v. Turnley (Tex. Civ. App.), 220 S. W. 428; Harrington v. Claflin, 91 Tex. 294 (42 S. W. 1055); Huselby v. Allison (Tex. Civ. App.), 25 S. W. (2d) 1108; Stoy v. Bledsoe, 31 Ind. App. 643 (68 N. E. 907). See contra, Boss v. Hewitt, 15 Wis. 260, Kelley v. Whitney, 45 Wis. 110 (30 Am. R. 697), overruling Hart v. Stickney, 41 Wis. 630 (22 Am. R. 728). It has been held that where the interest on a note is payable in installments, the note is dishonored upon a failure to pay one of the installments when due. Newell v. Gregg, 51 Barb. (N. Y.) 263; First National Bank v. Forsyth, 67 Minn. 257 (69 N. W. 909, 64 Am. St. R. 415); Sorenson v. Greysolon, 170 Minn. 259 (212 N. W. 457); Yeomans v. Nachman, 198 Mo. App. 195 (198 S. E. 180). See contra, Indiana &c. Railway Co. v. Sprague, 103 U. S. 756 (26 L. ed. 554); Cromwell v. County of Sac, 96 U. S. 51 (24 L. ed. 681). It has also been held, without reference to the negotiable-instruments law, that a default in the payment of one of such installments when due is sufficient to authorize an inference that it was a circumstance sufficient to put a prudent man on his guard when purchasing a negotiable instrument. *Fidelity Trust Co.* v. *Mays,* 142 *Ga.* 821 (83 S. E. 961); *Georgia Granite R. Co.* v. *Miller,* 144 *Ga.* 665 (7 *b*) (87 S. E. 897); *Park* v. *Buxton,* 10 *Ga. App.* 356 (73 S. E. 557); also First National Bank v. County Commissioners, 14 Minn. 77 (100 Am. D. 194); Lumpkin v. Lutgens, 143 Minn. 139 (172 N. W. 893); National Bank v. Kirby, 108 Mass. 497. In General

Motors Acceptance Corp. *v.* Talbott, 39 Idaho, 707 (230 Pac. 30), it was held, that, under section 52 of the negotiable-instruments law, "if, in a promissory note providing for payment in installments, any installment is overdue at the time it is transferred, the purchaser takes the whole note as overdue paper and is not a holder in due course."

The reasoning of these decisions seems to be that a failure of the maker of a negotiable instrument to pay one of the installments due on the principal amounts to a dishonor of the note, and where the purchaser of a note takes it with notice that an installment of the principal is overdue, he has notice of this dishonor of the note, and therefore is not a holder in due course. The same rule would necessarily apply to a situation where, instead of the principal of the note being payable in installments at different dates, there is a series of notes, each payable at a different date, and all executed as parts of one transaction and for one consideration, viz., the aggregate amount of the principal of all the notes, whether the fact that all the notes were executed as part of one transaction appears on the face of the notes, or was otherwise known to the purchaser. Since, by the terms of section 52 of the negotiable-instruments law, the holder in due course of a negotiable instrument must have become "the holder of it before it was over due, and without notice that it had been previously dishonored, if such was a fact," the holder of the instrument is not a holder in due course if the note had previously been dishonored and this fact had been known to him. If, therefore, the failure on the part of the maker to pay one of a series of notes which was part of the same transaction amounted to a dishonor by him of the entire series, the holder of the series who acquired the notes after only one of them had become due and before the maturity of the others was not a holder in due course of the notes which had not become due, where he had notice that one of the notes was past due and thereby the entire series had been dishonored.

In the following cases it was held that knowledge by a purchaser of a negotiable instrument that an installment on the principal, or that one of a series of notes executed as parts of one transaction, was at the time overdue, was not, under the provisions of section 56 of the negotiable-instruments law, such knowledge of an infirmity or defect in the instrument, or of such facts, that the purchaser

acquired the instrument in bad faith. Spencer v. Alki Point Transportation Co., 53 Wash. 77 (101 Pac. 509, 132 Am. St. R. 1058) ; Cable v. Bruce, 135 Okla. 170 (274 Pac. 665, 64 A. L. R. 451) ; Morgan v. Farmington Coal Co., 97 W. Va. 83 (124 S. E. 591). These decisions were not rendered with reference to the provisions of section 52 of the negotiable-instruments law, but were rendered solely with reference to section 56. They hold that knowledge by the holder of a series of notes, or of a note payable in installments, that one of the series, or one of the installments, was past due when he acquired the notes, was not "knowledge of such facts that his actions in taking the instrument amounted to bad faith."

It therefore appears that the law merchant as construed in different States, as well as the interpretation of the negotiable-instruments law, is conflicting as respects the status of a holder of a series of notes who acquired the notes after one of them had fallen due. While the law merchant, or the common law, which, by the terms of the negotiable-instruments law itself, is applicable to situations not covered by that act, has reference to the law merchant, or the common law, as such, and not to any statutory enactments in the particular State prior to its adoption of the negotiable-instruments law, the only authoritative determination as to what constitutes the law merchant, or the common law, which is applicable as complementary to the provisions of the negotiable-instruments law in a particular State, must be found in the decisions of the courts of that State or codifications announcing the law merchant or the common law as it obtains in that State. *Slaton* v. *Hall,* 168 *Ga.* 710 (148 S. E. 741). Section 4287 of the Civil Code of 1910, which purports to be only a codification of a rule of the law merchant, or of the common law in force in this State, must, since it announces a rule of the law merchant or the common law as respects a situation which is not covered or provided for in the negotiable-instruments law, be taken as expressing the rule obtaining in this State. *Railway Clerks Investment Asso.* v. *Wells,* 147 *Ga.* 377 (94 S. E. 228) ; *Harrell* v. *Broxton,* 78 *Ga.* 129 (3 S. E. 5).

No question is presented as to whether the law of Iowa or the law of Georgia is applicable to this case. As the law of the foreign jurisdiction is not invoked, the law of the forum will prevail. See, in this connection, Monroe v. Douglass, 5 N. Y. 447; Buchanan v. Hubbard, 119 Ind. 187; Minor, Conflict of Laws, § 214. See gen-

erally, in this connection, 3 R. C. L. 1048, and 8 C. J. 478; 11 Ann. Cas. 42, note; 1 Daniel on Negotiable Instruments (6th ed.), § 787; 46 L. R. A. 799, note. On the question of what constitutes notice or bad faith under section 56 of the negotiable-instruments law, see the following: Goodman v. Simonds, 20 How. (U. S.) 343 (15 L. ed. 934); Murray v. Lardner, 2 Wall. 110 (17 L. ed. 857); Hamilton v. Vought, 34 N. J. L. 187; *Matthews* v. *Poythress,* 4 *Ga.* 287; 5 Michigan Law Review, 355. Without holding that section 4287 of the Civil Code of 1910 as such has not been superseded by the negotiable-instruments law, we do hold that the rule announced in that section, that under the law merchant, or the common law, codified therein, to the effect that the purchaser of a series of notes which constitutes one transaction, who acquires the notes with knowledge of this fact and after one of the notes has become due, takes all the notes with notice that they have been dishonored, as provided in section 52 of the negotiable-instruments law. The evidence authorized the inference that the plaintiff was not a holder in due course, and that the consideration for which the notes had been given, had totally failed. The court therefore erred in directing a verdict for the plaintiff.

*Judgment reversed. Jenkins, P. J., and Bell, J., concur.*