## MAYNARD *et al. v.* ARMOUR FERTILIZER WORKS *et al.*

1. Where creditors obtained judgments against a common debtor and had executions issued, on which entries of nulla bona were made, they could file an equitable petition against the debtor and grantees to whom the debtor had executed a deed, attacking such conveyance as fraudulent and made to delay or defraud them and other creditors, and seeking to subject said property.  Such a petition, with proper allegations, would not be demurrable on the ground that the plaintiffs had an ample common-law remedy without invoking equitable relief.

2. Nor would it be demurrable on the ground that there was a misjoinder of plaintiffs, in that several judgment creditors of the same debtor joined therein.

3. Nor on the ground that a judgment held by one of the plaintiffs was against the common debtor and also against her husband, who was alleged to be insolvent.

4. The petition filed was demurrable.  It nowhere alleged that the grantees in the deed attacked participated in a fraudulent plan (if it existed) to prevent the plaintiffs from collecting the amounts due them, or had notice thereof.  The deed attacked bore date before the creation of the debts on which the judgments were founded.  There was no distinct charge that it was not then executed.  There was some suggestion that the valuable consideration recited in the deed was not paid, but there was no direct allegation to that effect.

5. If it was intended to charge that the grantees had no means with which to pay the recited consideration, or did not in fact pay it, such allegation should have been directly made, and not by mere inference from pleading collateral facts, which might possibly have an evidential value, and then drawing conclusions therefrom.

(*a*) Certain specified paragraphs in the petition are held to have been subject to special demurrer.

AUGUST 17, 1912.

Equitable petition.    Before Judge Whipple.    Wilcox superior court.    March 21, 1911.

The Armour Fertilizer Works and others filed their equitable petition against Mrs. L. M. Maynard and her two daughters, Myrtle Maynard and Lillie Mae Maynard, alleging in substance as follows:    Plaintiffs were creditors of Mrs. Maynard, their debts having been created in 1906, beginning in the early part thereof.

One of them held the note of Mrs. Maynard and her husband, but the latter was hopelessly insolvent and had been so for several years. They reduced their claims to judgment, executions had been issued, and entries of nulla bona made thereon. The earliest of these judgments was dated in May, 1907, and the others bore later dates in that year. J. D. Maynard, the husband of Mrs. Maynard, always managed her business affairs for her, and in the years 1905, 1906, and 1907 he was her general agent. In 1906, when the debts of the plaintiffs were created, she was in possession of a considerable amount ·of property, including certain lots in the town of Abbeville and certain farm property, and she returned such property for taxation as her own. Mrs. Maynard lived on a part of the property situated in town, and her two children lived with her. There has never been any apparent change in the possession thereof. She had title to all of the property described in the petition, "except such title as may have passed out of her by the three deeds hereinafter set forth." During the year 1906 she be- came heavily indebted, and also before and since that time contracted various debts, some of which have been reduced to judgment. She became indebted to the Chickamauga Trust Company in the sum of $3,000. She made a deed to her farm near Abbeville, for the purpose of securing the debt. She made to her brother, T. L. Shepherd, a deed dated January 3, 1907, for a purported consideration of $4,000. This was recorded on November 20, 1907. On the same date there was filed for record a deed purporting to have been made on February 21, 1905, for an alleged consideration of natural love and affection and $500, whereby she undertook to convey all of her property described in the petition, except the farm. She now claims that she has no real estate, and plaintiffs have been unable to find any other property. Various allegations were made in regard to Shepherd, such as that he resided in the city of Savannah and was engaged in no occupation so far as plaintiffs were able to ascertain, and made no tax returns for the year 1906. There were also some allegations in regard to the estate of his father, made for the purpose of showing what amount of money he probably received from that source. In 1907 the farm was under the control and direction of J. D. Maynard, as it had been for a number of years previously, and this continued during the year 1908 and still continues, so far as plaintiffs are able to as-

certain. The deed from Mrs. Maynard to her two daughters purports to have been made for love and affection and a consideration of $500, although the property therein described is worth from $3,500 to $4,000. If $500 were paid at all, this was an inadequate consideration. The grantees are the only children of Mrs. Maynard, and have all their lives resided with their parents, and still do so. They have been engaged in no business during the past four or five years, "so far as your petitioners are able to ascertain, and therefore have no means for making money." So far as the plaintiffs by diligent inquiry can ascertain, they have not inherited money or property from any source. Unless plaintiffs can subject the real estate described for the payment of their debts, they will not be able to realize thereon.. The deed made by Mrs. Maynard to her daughters was not made in good faith, but was made to hinder and delay plaintiffs and other creditors, and so likewise was the deed which was made to Shepherd. Plaintiffs bring this petition in behalf of themselves and other creditors in like circumstances who may see fit to join in the litigation. The petition then closed with this allegation: "Your petitioners charge, that both of said deeds, the one to T. L. Shepherd and the one to Myrtle Maynard and Lillie Mae Maynard, were a part and parcel of a well-laid plan to prevent petitioners from collecting the amount due them as aforesaid; and that, although said deeds are [not?] near each other in apparent date, yet your petitioners charge the fact to be that the said two deeds were executed at one and the same time or at all events near the same time." The prayers were, that the deed from Mrs. Maynard to her two daughters be declared to be fraudulent, and be set aside and canceled as against the rights of the plaintiffs; that it be declared that the property is subject to the plaintiffs' executions; and that process issue. General and special demurrers to the petition were overruled, and the defendants excepted.

*Haygood & Cutts* and *M. B. Cannon,* for plaintiffs in error.
*Hal Lawson,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Creditors, having reduced their claims to judgment, and having had entries of nulla bona made on the executions, filed an equitable petition seeking to subject certain land which had been conveyed by the debtor to her two daughters, and to have the deed

canceled. The presiding judge overruled a demurrer to the petition, and the defendants excepted. One of the principal contentions on the part of the plaintiffs in error is that the defendants in error had a complete remedy at law, by levying their executions; and that there was no equity in a petition which sought to set aside a conveyance made by the debtor, on the ground that it was fraudulent. This contention is unsound. Where the remedy at law is not as complete as in equity, equitable relief may be had. It has long been a recognized rule that where judgment creditors can not obtain payment of their judgments by levy and sale, and it is necessary to set aside fraudulent transactions, they may resort to a court having equitable jurisdiction. Formerly the more frequent contention advanced was that the creditor could not go into equity until after he had reduced his claim to judgment, and sometimes, it was said, not until after he had had an entry of nulla bona made. This was changed by the uniform procedure act of 1887, under which a creditor may at once proceed to obtain judgment on his claim and to have a decree subjecting property fraudulently conveyed away by his debtor. *DeLacy* v. *Hurst*, 83 *Ga.* 223 (9 S. E. 1052). But the enlarging of the right of a creditor without judgment did not operate to destroy the pre-existing right of a creditor with a judgment. The former argument that one without a judgment and execution could obtain no equitable relief as against fraudulent conveyances is now reversed, and the contention is made that plaintiffs who have obtained judgments are entitled to no such relief. I omit reference to lien creditors other than by judgment. The plaintiffs in this case alleged that they had obtained judgments and had caused executions to be issued, and that the proper officer had made an entry of nulla bona thereon. This is sufficient to show that they have obtained an adjudication that they are entitled to payment and have procured executions to issue, but the levying officer can find nothing upon which to levy. They find confronting them a conveyance made by the debtor. Should they levy upon the property, they could not compel the daughters of the debtor (the grantees in the deed) to interpose a claim, or other proceeding, under which the title could be tested and an adjudication had that the property was subject, so that it might be sold free from the cloud cast over it by such deed. Should the grantees see fit to do so, they might let

the property be sold for some small amount, and then contest the title with the purchaser. The executions of the plaintiffs amount to· a considerable sum, and it is not certain whether, under such conditions, the property would bring enough to pay them, much less other executions outstanding, the holders of which may be ·made parties under the invitation contained in the petition, and may make a contest for the fund.

With proper allegations, these judgment creditors might seek equitable relief, and their petition would not be demurrable on the ground that they had an ample remedy at common law by levy and sale, and were therefore not entitled to institute any equitable proceeding. *Thurmond* v. *Reese,* 3 *Ga.* 449 (46 Am. D. 440); *Stephens* v. *Beall,* 4 *Ga.* ·319; *Lathrop* v. *McBurney,* 71 *Ga.* 815; *Conley* v. *Buck,* 100 *Ga.* 187, 190 (28 S. E. 97).

2, 3. There was no error in overruling the ground of the demurrer which set up that there was a misjoinder ·of plaintiffs. All the ·plaintiffs had a common interest in setting aside the alleged fraudulent conveyance and subjecting the property conveyed by one of the defendants to the others as tenants in common for the payment of their claims. Neither was there any merit in the contention that there was a misjoinder of causes of action because the petition showed that one of the plaintiffs had a judgment against Mrs. L. M. Maynard and her husband, J. D. Maynard, while the others held judgments against Mrs. Maynard alone. It was alleged that J. D. Maynard was hopelessly insolvent and nothing could be made out of him. His being named as a defendant in one of the judgments, therefore, did not preclude the plaintiff who held such judgment from joining in the effort to subject property of the other defendant, or render such action a misjoinder of parties plaintiff or of causes of action.

4. Having held that the plaintiffs in execution might, with proper allegations, maintain an equitable petition for the purpose of subjecting certain property alleged to have been fraudulently conveyed by the defendant in execution to her daughters, and would not be prevented from so doing on the ground that there was an ample common-law remedy, the next question which presents itself is whether the petition contained proper allegations so as to bring it within the ruling thus made. We do not think that it did. It alleged that a conveyance was made by Mrs. Maynard

to her two daughters and one to her brother, and charged that these deeds "were part and parcel of a well-laid plan to prevent the petitioners from collecting the amount due them as aforesaid," but it nowhere alleged directly that the two daughters took any part in such plan, or had any notice of the existence of the fraud, if there was one. It showed that the deed to the daughters was dated about a year before any of the debts held by the plaintiffs were contracted, and that the deed to Shepherd bore date after such debts were contracted, but before judgments were obtained. It was alleged that "although said deeds are [not?] near each other in apparent date, yet your petitioners charge the fact to be that the said two deeds were executed at one and the same time or at all events near the same time." Whether that time was the year before the debts to the plaintiffs were created, or afterwards, does not appear. There was some intimation that the plaintiffs doubted whether any consideration was paid by the daughters to the mother, but there was no direct allegation that such payment was not made. It was alleged that the purported consideration of $500, if paid at all, was very inadequate; but this was not a direct allegation that there was no consideration, or that the deed was in fact a voluntary conveyance. If it was intended to make such a charge, the vagueness of the allegation in regard to the time when the deed was executed becomes all the more subject to demurrer, because there is quite a difference between the making of a voluntary conveyance before a debt is created and after its creation. *First National Bank* v. *Bayless,* 96 *Ga.* 684 (23 S. E. 851).

5. In several paragraphs of the petition the plaintiffs set out collateral evidential facts which the jury might perhaps believe point in the direction of fraud on the part of the grantees; but it is not good practice to plead evidence instead of directly alleging an issuable fact. Legitimate inferences may be drawn from evidence in favor of the introducer. Such is not the rule as to pleadings. Thus, in the 67th paragraph of the petition, it is alleged: "Petitioners show that the said Myrtle and Lillie Mae Maynard have been engaged in no business whatever during the last four or five years, so far as your petitioners are able to ascertain, and therefore have had no means for making money." Suppose that the defendants should deny the allegations of this paragraph, what

would be put in issue? Would the issue be that the two daughters named had been engaged in no business; or would it be that the plaintiffs had not been able to ascertain that they had been so engaged; or would it be whether, from their inability to so ascertain, they drew a legitimate conclusion that "therefore the two daughters had no means for making money?" If the plaintiffs intended to charge that the two daughters had no means of making money and had no money, or that they did not in fact pay the $500 stated as a consideration in the conveyance to them, it should have been alleged directly, and not inferentially because the plaintiffs had been unable to ascertain that the daughters had been engaged in any business. Several of the other paragraphs are of the same character. Without reciting them in full, it is sufficient to say that paragraphs 51, 52, 67, 68, and 69 of the petition should have been stricken on special demurrer, and the general grounds of the demurrer should have been sustained.

One ground of the demurrer undertakes to attack certain paragraphs in the petition in regard to Shepherd, and to refer to such paragraphs by number, but fails to state the numbers of the paragraphs to which reference is made, leaving them blank; and we therefore give it no further consideration. It can not be said generally that all references to Shepherd were irrelevant. The other grounds of the special demurrer were without merit.

*Judgment reversed. All the Justices concur.*