WHITNEY v. CHADSEY.

1. BILLS AND NOTES — NEGOTIABLE INSTRUMENTS — INDORSER — MAKER.

Under the negotiable instruments act (2 Comp. Laws 1915, § 6104) providing that one placing his signature upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, one who indorses an instrument before delivery is liable as an indorser rather than as a joint maker; the rule in force previous to the passage of said act being changed.

2. SAME—INDORSER—DISHONOR—NOTICE.

Where the indorser of a note sued on was the president of the company giving the note, and payment could only be made through him because he only was authorized to sign checks, he was in effect the person to whom the instrument was to be presented for payment, and under 2 Comp. Laws 1915, § 6156, subd. 2, he was not entitled to notice of dishonor to hold him liable as an indorser, since he already had the knowledge which the notice is supposed to furnish him.

Bills and notes: On implied waiver of presentment and notice by indorser before maturity, see notes in 33 L. R. A. (N. S.) 639; L. R. A. 1916B, 944.

3. SAME—PRESENTMENT—DISHONOR—NOTICE—WAIVER.

Where the indorsers of a corporation's notes were its officers and directors, and although they were short-time instruments it was understood they would not be paid until the company's orchards came into bearing, and that the indorsers would be personally liable thereon, there was such a state of affairs shown from which 'an inference might have been drawn that the indorsers waived notice of demand and dishonor.

4. SAME — NEGOTIABLE INSTRUMENTS ACT — LAW-MERCHANT—DIS-HONOR—NOTICE—WAIVER.

Waiver of notice of dishonor .may be made under the terms of the negotiable instruments act (2 Comp. Laws 1915, § 6150), as well as under the law-merchant.

Error to Wayne; Goff (John H.), J.    Submitted October 26, 1921.    (Docket No. 11.)    Decided December 21, 1921.

Assumpsit by Elson H. Whitney against Charles E. Chadsey on certain promissory notes. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Welsh, Bebout & Kahn,* for appellant.

*Oxtoby, Robison & Hull,* for appellee.

BIRD, J.    This is an action to recover from defendant on 12 promissory notes given by the Cedaredge Orchard Company and indorsed by defendant and other directors of that company. Defendant successfully defended in the trial court on the ground that he had received no notice of the presentment and dishonor of the notes by the company. In 1908 defendant was connected with the public schools of Denver. He and a few friends organized the Cedaredge corporation with an authorized capital of $50,000 to promote a fruit orchard on the western slope of the Rocky Mountains. They purchased a tract of land for

$20,000, upon which there was a mortgage for $17,000. There were 3 acres of trees growing thereon. They, or the company, set out trees each year until they had 173 acres devoted to an orchard. In developing this industry in its early stages, when nothing was coming in, they did not have money enough to finance it without borrowing. They interested one W. P. Herrick, a book dealer in Denver, to assist them. He apparently was friendly to the defendant and his companions and was a believer in the ultimate success of the project; and he loaned them money from time to time and took the notes of the company indorsed by defendant and his co-directors. This Herrick continued to do up to the time of his death, which occurred in January, 1912. After Herrick's death his wife, knowing the confidence her husband had in the ultimate success of the venture when the trees should reach the fruit-bearing stage, and knowing his friendship for and confidence in defendant and his co-workers, agreed to, and did, loan the company additional funds to carry on the project. Nothing was ever paid upon these notes except the interest. In all, 12 notes were given, 7 to Mr. Herrick, and 5 to Mrs. Herrick, aggregating the sum of $6,081. Interest on the notes was paid by sale of stock and by advancements made by the defendant and other members of the board. There was some income from the annual crops grown on portions of the land, but this was used in carrying on the work. In 1912 defendant left Denver and came to Detroit to live. He was president of the company from the time it was organized up to 1913, and was during that time active in the management of the corporate affairs. After that date the defendant resided in Detroit. The orchards did not develop as expected. On account of the low price of fruit the value of orchard lands and of these lands in Colorado depreciated in value,

and the company got into a bad way financially. Later Mrs. Herrick died and her administrator indorsed the notes to plaintiff for collection.

In the trial court defendant started with two defenses—statute of limitations and want of notice of dishonor. After the trial had progressed for a time the defense of the statute of limitations was abandoned, leaving the want of notice the sole defense. The plaintiff admitted that no formal notice of dishonor was served on defendant, but insisted that the relation of the parties was such that it was unnecessary to give him formal notice, and further insisted that the defendant by word and deed had waived it.

1. It appears that these notes were indorsed by defendant before delivery to Herrick, and the question is raised, but not strenuously insisted upon, that for this reason defendant was a joint maker and not entitled to notice. This was undoubtedly the rule in this State before the negotiable instrument act went into effect in 1905. *Weatherwax* v. *Paine,* 2 Mich. 555; Bunker on Negotiable Instruments, p. 120, and cases. But we are of opinion that the negotiable instrument act changed this rule. Section 65 of the act provides:

"A person placing his signature upon an instrument, otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." 2 Comp. Laws 1915, § 6104.

Before the negotiable instrument act was promulgated the courts of the country were divided upon the question as to whether the indorser, under such circumstances, was liable as a joint maker. This rule appears to have been incorporated to clear up that question. Under this rule defendant was entitled to notice of the dishonor of the note unless the circum-

stances of the case bring it within some of the exceptions to the rule.

Section 117 of the negotiable instrument act (2 Comp. Laws 1915, § 6156) recites certain exceptions to the foregoing rule, as follows:

"Notice of dishonor is not required to be given to an indorser in either of the following cases:

"*First,* where the drawee is a fictitious person or a person not having capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument;

"*Second,* where the indorser is the person to whom the instrument is presented for payment; or

"*Third,* where the instrument was made or accepted for his accommodation."

We are impressed that the special circumstances of this case bring it within the second subdivision. The testimony shows that defendant assisted in organizing the company and acted as its president from its organization down to the time he left for Detroit in 1912. He was active in its affairs, procured loans for the company, including this one, and he was authorized to, and did, prepare and sign the checks which were issued by the company. No debt or obligation could be paid without his knowledge and signature. This by-law was so well enforced that the practice was continued after defendant removed to Detroit, and up to January, 1913. After he left Denver the checks were sent to Detroit for his signature. As president of the company, with sole power to draw checks for the company in payment of the note, he was in effect the person to whom the instrument was to be presented for payment. The note could not be paid until he acted. Occupying this position he already had the knowledge which the notice is supposed to have furnished him. Suppose the holder of the note had presented it for payment to the company and defendant had refused to draw a check in

payment thereof on account of the lack of funds, could notice of these facts have informed defendant of any fact he did not already know? We think not. His commanding position in the affairs of the company and his sole power to make payment of the note made the notice to him useless and brought him within the second exception to the rule.

This exception to the rule was invoked in *Re Swift,* 106 Fed. 65. The firm of E. C. Hodges & Company had given a note indorsed by E. C. Hodges. The firm was on the verge of bankruptcy. Several days before maturity Hodges had advised the holder of the note that neither the company nor himself could pay it at maturity. In his suit against the indorser the defense was made that no presentment was made to the maker nor any notice of dishonor given to Hodges. It further appeared that the indorser was a party to whom demand would have to be made as maker. In overruling this defense the court said in part:

"By section 115 notice of dishonor is not required 'where the indorser is the person to whom the instrument is presented for payment.' The instrument here was not presented to Hodges for payment because he had given the creditor to understand that presentment would be useless. The exception was inserted to avoid the necessity of giving notice of a fact which, by the terms of the exception, must be within the personal knowledge of the man notified. It is no straining of language to hold that the term 'person to whom the instrument is presented for payment' includes a person to whom the instrument would have to be presented if he had not both as maker and as indorser waived such presentment."

Substantially the same question arose in *William S. Merrill Chemical Co.* v. *Root,* 152 N. Y. Supp. 368. A note for $700 was made by the corporation and signed by the president and VanNostrand as assistant treasurer, and indorsed by VanNostrand individ-

ually. In his suit against VanNostrand, the indorser, he defended on the ground of want of notice. In holding that he was not entitled to notice the court said:

"True, the Root-Knight Company was not in bankruptcy at the time that this note was presented, but the reasoning of the case is that the presentment and notice are unnecessary where the indorser, because of his own act, knew that the note could not be paid without his act as assistant treasurer, and as an individual he knew when the note fell due that the corporation did not pay it. Notice of dishonor was not required, because Mr. VanNostrand was the person to whom the instrument was presented for payment, and this exception was inserted to avoid the necessity of giving notice of a fact, which, by the terms of the exception, must be within the personal knowledge of the man notified."

To the same effect is *Westinghouse Electric & Manfg. Co.* v. *Hodge*, 181 Mo. App. 232 (167 S. W. 1186).

2. We are also of the opinion that the testimony shows a state of affairs from which an inference might have been drawn by the jury that the defendant had waived notice of demand and dishonor. The testimony tending to establish the fact that neither the maker, holder nor indorser understood the notes were to be paid at maturity is very strong. It appears to have been understood by all of them that at the maturity of the notes the company would have no money to pay them, and further that the notes would not be paid until the orchard commenced to bear fruit. Defendant says neither Mr. nor Mrs. Herrick ever demanded payment. Unless this had been the view Mr. Herrick would not have made the second loan as long as the first one was unpaid, and he would have been less likely to have made the third, fourth, fifth, sixth and seventh loan as long as the preceding

ones were in default. The notes were all short time paper, 30, 60 and 90 days, and finally they were all in default, but notwithstanding this the interest was paid on them and no word was uttered by defendant indicating that he regarded himself relieved from liability. It is quite evident Mr. Herrick understood matters in this way and his wife indicated through her attorney she so understood it. Mr. Jackson testified that after the death of Mr. Herrick the directors met Mrs. Herrick in his office. They wanted more money. He testified:

"They were all assembled in my office and I stated to these gentlemen, in the presence of Mrs. Herrick, that Mrs. Herrick had concluded to advance to them sums of money to carry on this Cedaredge proposition, but that she was looking directly to them to repay her the money; she cared nothing for the corporation, but as her husband had trusted them and had loaned them money in the same way and she knew them as school men, she would expect them personally and individually to repay the money. They all stated, in substance, Mr. Chadsey among them, that they understood that. * * * They stated they were very much in need of the money immediately and asked if she could let them have some right away. I asked them how much they needed and they stated fifteen hundred dollars. She drew her check for that amount of money and they signed up this note, Exhibit 9, and delivered it to Mrs. Herrick, and she delivered her check for that amount.

"*Q.* Was anything said at that time in that conversation in reference to her advancing additional sums in the same way later on? * * *

"*A.* That she would continue to advance them sums of money from time to time as they needed it, and accept the same kind of paper. * * *

"*Q.* What was said in reference to Exhibits 2-8 inclusive, the notes payable to W. P. Herrick, in reference to their being past due or otherwise? * * *

"*A.* Some one of the group of men who were interested in this corporation stated that the estate of W. P. Herrick now held a good deal of their paper and

it would be good business for her to continue to advance them sums of money to help them carry out their plans and to protect, to a certain extent, the paper the estate held, and while they were not able to pay it then, they were sure they would be if she would further finance them."

If the dealings of the parties were such that Mr. and Mrs. Herrick were misled by the act or deed of the directors into believing that demand and notice were unnecessary a jury would be justified in finding that the demand and notice were waived. The waiver of notice may be made under the terms of the negotiable instrument act, which was adopted in Michigan in the year 1905, and by the State of Colorado in the year 1897. 2 Comp. Laws 1915, § 6150. Waiver of notice of dishonor was also recognized by the law-merchant. *Baumeister* v. *Kuntz*, 53 Fla. 340 (42 South. 886); *Sheldon* v. *Horton*, 43 N. Y. 93; *Worley* v. *Johnson*, 60 Fla. 294 (53 South. 543, 33 L. R. A. [N. S.] 639); *In re Swift*, 106 Fed. 65; *Fuller* v. *McDonald*, 8 Greenleaf (Me.), 213; *Boyd* v. *Bank of Toledo*, 32 Ohio St. 526; *Annville Nat. Bank* v. *Kettering*, 106 Pa. St. 531; *Torbert* v. *Montague*, 38 Colo. 325 (87 Pac. 1145); *Bessenger* v. *Wenzel*, 161 Mich. 61 (27 L. R. A. [N. S.] 516); *Gilder* v. *Welch*, 169 Mich. 496.

The judgment of the trial court is reversed and a new trial ordered, with costs to plaintiff.

STEERE, C. J.. and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.