31172. MURRAY, administratrix, *v.* ANDERSON, guardian, etc.

DECIDED APRIL 11, 1946.   REHEARING DENIED MAY 3, 1946.

*Hall & Bloch,* for plaintiff.

*Anderson, Anderson & Walker,* for defendant.

SUTTON, P. J. (After stating the above facts.) ■ The note sued on in the present case is made payable to the order of E. B. Murray, and is signed "Adams-Swirles Cotton Mills, by J. T. Adams, Pres." on the front of the note, and the name "J. T. Adams" is written across the back of the note. Under the negotiable instruments law (Code, § 14-604), "A person placing his

signature upon an instrument other than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." J. T. Adams in signing his name across the back of the note did not indicate by appropriate words his intention to be bound thereon in some other capacity than as indorser; and, under the law and the facts appearing from the petition, the defendant Adams is to be deemed an indorser and will be dealt with as such in determining this case.

■ The Code, § 14-605, provides: "Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivering, he is liable as indorser, in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties." It appears from the petition that E. B. Murray, the payee of the note, is dead, and the suit is by the administratrix of his estate against the guardian of J. T. Adams. Adams-Swirles Cotton Mills, a corporation, had been dissolved and its charter surrendered to the State more than three years before the filing of the petition, and that is the reason alleged in the petition for not making the corporation a party defendant. "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. Except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers." Section 14-701. The note sued on is due on demand, and § 14-702 provides: "Where it is payable on demand, presentment must be made within a reasonable time after its issue, except that in case of a bill of exchange, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof." Sections 14-703—14-706 provide by whom, when, where, and how presentment must be made. Section 14-801, declares: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

The defendant in error contends that it does not appear anywhere in the plaintiff's petition, that the note was presented for payment to Adams-Swirles Cotton Mills, the maker of the same, that payment was refused, and that notice of dishonor of the note was given to the defendant's ward, as required by law, in order to bind him as indorser thereon; and therefore his demurrer to the petition to this effect was properly sustained by the court. The defendant's contention in this respect, under the general rules set forth in the negotiable instruments law relative thereto, is sound and the judgment sustaining the demurrer and dismissing the action should be affirmed, unless the facts alleged in the petition and what appears therefrom take the case without these general rules.

■ The plaintiff in error contends that her petition shows that presentment and notice of dishonor were waived by the defendant, and that the case made by her petition comes squarely within the principle ruled by the Supreme Court in *Hull* v. *Myers, 90 Ga.* 674 (16 S. E. 653), and within the provisions of the negotiable instruments law, wherein presentment and notice of dishonor of negotiable instruments are dispensed with under certain conditions. Let us first look to the provisions of the negotiable instruments law as embodied in our Code, where presentment and notice of dishonor are dispensed with or not required in order to charge an indorser. The Code, § 14-711, states: "Presentment for payment is not required in order to charge an indorser, where the instrument was made or accepted for his accommodation and he has no reason to expect that the instrument will be paid if presented;" and § 14-713: "Presentment for payment is dispensed with: . . (3) By waiver of presentment, expressed or implied;" and § 14-714: "The instrument is dishonored by nonpayment when: (1) It is duly presented for payment and payment is refused or cannot be obtained; or (2) Presentment is excused and the instrument is overdue and unpaid;" and § 14-821: "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied;" and § 14-827: "Notice of dishonor is not required to be given to an indorser in either of the following cases: . . (2) Where the indorser is the person to whom the instrument is presented for payment; (3) Where the instrument was

made or accepted for his accommodation." So it will be observed that presentment and notice of dishonor may be dispensed with or waived under certain conditions, under the provisions of the negotiable instruments law, adopted in this State, and the waiver may be expressed or implied.

■ There is no express waiver in the note sued on, but the plaintiff contends that the case made by the amended petition shows an implied waiver of presentment and notice of dishonor. The petition as amended shows that, at the time J. T. Adams indorsed the note sued on, he was the president of Adams-Swirles Cotton Mills, the maker of the note, and as such president executed the note for the maker; that he was the acting managing officer of the business of said corporation; that he was the majority stockholder of the corporation, and had under his own control and management all the assets and business of Adams-Swirles Cotton Mills; and that it was his duty to see that funds were provided for the payment of the note and that the note was paid. Under these allegations, Adams knew everything about this note that the corporation knew. If it was presented for payment, the reasonable inference is that it was presented to him, because he was in complete control of the management, assets, and business of the corporation, and it was his duty to see that funds were provided for the payment of this note and that the note was paid. The note was for the principal sum of $15,000, with interest from date at 8 percent per annum, was dated September 30, 1929, and was payable on demand. Where a note is payable on demand, presentment must be made within a reasonable time after its issue. Code, § 14-702. It evidently was presented for payment, for the following payments are credited on the note: January 9, 1930, $7000; April 7, 1930, $134.23; June 3, 1930, $1000. No further payments were made, and the balance of the note remained unpaid.

From the allegations of the petition and the legal inferences to be drawn therefrom, we think that it can be properly said that the note was due, that it had been presented for payment, and that it was not paid. It was dishonored by nonpayment. Who knew about these things? According to the facts appearing from the petition, J. T. Adams was the person who necessarily had knowledge of all of these matters. "The instrument is dishonored by nonpayment when: (1) It is duly presented for payment and

payment is refused or cannot be obtained; or (2) Presentment is excused and the instrument is overdue and unpaid" (Code, § 14-714); and notice of dishonor is not required to be given to an indorser where the indorser is the person to whom the instrument is presented for payment. This last statement is the second division of Code, § 14-827, above referred to. In Whitney *v.* Chadsey, 216 Mich. 604 (185 N. W. 826), in dealing with the identical provision of the negotiable instruments law adopted in that State, in a case similar to the one at bar the Supreme Court of Michigan said, among other things: "As president of the company, with sole power to draw checks for the company in payment of the note, he was in effect the person to whom the instrument was to be presented for payment. The note could not be paid until he acted. Occupying this position, he already had the knowledge which the notice is supposed to have furnished him. . . His commanding position in the affairs of the company and his sole power to make payment of the note made the notice to him useless and brought him within the second exception to the rule." And the Michigan court quoted approvingly from the case of Re Swift, 106 Fed. 65, as follows: "By section 115 notice of dishonor is not required 'where the indorser is the person to whom the instrument is presented for payment.' . . It is no straining of language to hold that the term 'person to whom the instrument is presented for payment' includes a person to whom the instrument would have to be presented if he had not both as maker and as indorser waived such presentment." The second headnote in the Whitney case is as follows: "Where the indorser of a note sued on was the president of the company giving the note, and payment could only be made through him because he only was authorized to sign checks, he was in effect the person to whom the instrument was to be presented for payment, and under 2 Comp. Laws 1915, § 6156, subd. 2, he was not entitled to notice of dishonor to hold him liable as an indorser, since he already had the knowledge which the notice is supposed to furnish him." In Verser *v.* Sterling Oil &c. Co., 89 Okla. 114 (213 Pac. 863), the Supreme Court of Oklahoma, in dealing with the same provision of the negotiable instruments law, said: "At any rate, this court is of the opinion that the doctrine announced by the Missouri case should be followed, and where the indorser of a promissory note

is the chief officer of the corporation which executed the note as the maker and the person upon whom formal presentation by creditors of the corporation would have to be made of their demands for payment, in such cases notice of dishonor is not required to be given to such indorser and is excused by the second subdivision of section 7785, Comp. Stat. 1921."

We think that the petition as amended shows sufficient facts to excuse the giving of notice of dishonor of the note in order to charge the indorser with liability thereon. The amended petition brings the plaintiff's case within the exceptions contained in the negotiable instruments law enacted in this State, with respect to presentment and notice of dishonor, that is, the facts disclosed by the petition show an implied waiver of presentment and notice of dishonor on the part of the indorser, so as to charge him with liability on the note in question.

■ The plaintiff in error also relies strongly on the decision of the Supreme Court in *Hull* v. *Myers*, supra, as controlling in this case. But the defendant in error contends, among other things, that the adoption of the negotiable instruments law in this State, in 1924, superseded the ruling in the *Hull* case, and that it is no longer the law and is without application in the present case. When that decision was rendered in 1892, the Code of 1882, § 2781, was in effect and required that notice of nonpayment, etc., of certain negotiable instruments be given to an indorser within a reasonable time in order to render him liable on the instrument. The present case is not distinguishable on its facts from the *Hull* case. It was there held, among other things, that "accommodation indorsers who represent their insolvent principal in procuring a loan of money for the principal's use, upon a promissory note which they cause to be made in his name and which they indorse in their own names, they having at the time full control of his business and all his assets, and their relation to him being such as to make it their duty to see that the note is provided for and paid at maturity, are not entitled to notice of its dishonor." It was stated in that case that a single director, or a minority of directors, indorsing a note for the corporation might be entitled to notice of its dishonor, for they might have a right to suppose that the note would be paid or attended to at maturity. This statement was carried forward and referred to by the court in *Ennis* v.

*Reynolds,* 127 *Ga.* 112 (56 S. E. 104), but the latter case is not at all like *Hull* v. *Myers,* supra, and a statement to this effect was made by the court in the *Ennis* case.

The defendant in error cites and relies on *Massell* v. *Prudential Ins. Co.,* 57 *Ga. App.* 460 (196 S. E. 115). That case is distinguishable on its facts from the case at bar, as well as from the *Hull* case. The suit there was on a note signed by Massell Investment Company and indorsed by B. J. Massell, L. I. Massell, and S. A. Massell. No pleadings were filed by the investment company and B. J. Massell, and the case was adjudged in default as to them. L. I. and S. A. Massell demurred to the petition on the ground that it did not appear from the petition that the note had been presented for payment or that notice of dishonor of the instrument had been given to the indorsers or that notice of dishonor had been dispensed with. The petition was amended to the effect that the indorsers on the note were "officers, stockholders, and/or directors" of the Massell Investment Company, and through the corporation received all of the consideration of the note. The demurrer was renewed; and this court held that the statement as to receiving the proceeds of the note by reason of the corporation receiving the same was a mere conclusion and unauthorized, because title to that fund was in the corporation, and it was not alleged that the money was paid over to the indorsers; and further held that this allegation was in conflict with another allegation in which it appeared that the indorsers received nothing of value from the transaction. The court then held that: "The allegation that they were 'officers, stockholders, and/or directors' of Massell Investment Company, apparently made for the purpose of contending that no necessity existed for notice of dishonor, is without avail, as it is not shown that they comprise the entire membership or a majority thereof, and, without that being true, they were entitled to notice;" and cited *Ennis* v. *Reynolds,* supra, as authority for the ruling. The case at bar is different on its facts from the *Massell* case and is not controlled by the ruling there made with respect to notice of dishonor, but comes within the principle ruled in *Hull* v. *Myers,* supra. At the time the decision in the *Hull* case was rendered, the statute dealt with contained no exceptions dispensing with notice of protest and dishonor of negotiable instruments; but it was then held that, where

an indorser occupies and has a similar position and relationship to the principal maker of the note as the indorser in the present case does, he is bound to know everything that the principal could or would know, and that notice to him of dishonor of the note was not necessary to bind him. The facts of that case took it out of the general rule of the then-existing statute as to notice of dishonor; and, in effect, the principle there ruled, dispensing with such notice, is now contained in the provisions of the negotiable instruments law and has been adopted as statute law in this State.

The law did not then, and does not now require, that notice of presentment and dishonor of a negotiable instrument be given to an indorser in order to charge him with liability, where he already has knowledge of such matters. Where the reason for the rule, under the facts, no longer exists, it is not necessary to comply with the requirements of such rule. The law does not require a useless thing, and it certainly would serve no useful purpose to give an indorser notice of something of which he already has knowledge.

■ The petition as amended shows an implied waiver of presentment and notice of dishonor of the note in question on the part of J. T. Adams, and the court erred in sustaining the demurrer and dismissing the petition.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment reversed. Broyles, C. J., and Parker, J., concur. MacIntyre and Gardner, JJ., concur specially. Felton, J., dissents.*

GARDNER, J., specially concurring. The demurrer is general in its terms. For this reason I concur in the majority opinion. It is my opinion that the evidence, to sustain the petition, must show, on the trial, that the indorser remained in exclusive charge of the assets of the corporation at least during the time when some of the alleged payments were made on the note. This appearing, the writer believes that such will authorize the jury to find that the indorser placed himself under the status where the law would imply that he waived any notice of dishonor. It was argued in conference by the author of the minority opinion that, so far as

the allegations showed, the indorser could have and may have been displaced as president in charge of the assets of the corporation. He could have sold his stock and become a stranger to the activities of the corporation the next day after the note was signed; that to conclude otherwise would be drawing an illegal inference that he continued as president and in complete charge of the corporate assets from the time the note was executed throughout the period in controversy. As the minority opinion holds, this would be drawing an inference upon an inference, contrary to law and not based upon an allegation of the ultimate fact sufficient to establish a recovery. I am in thorough accord with this principle, but differ with my esteemed colleague of the dissenting opinion that the pleadings in this case raise this issue. A special demurrer to this effect might have presented a different question.

MacIntyre, J., concurring specially. Irrespective of whether the negotiable instruments act of 1924 in effect repeals the ruling in *Hull* v. *Myers,* 90 *Ga.* 674 (supra), I think that the allegations of the petition show that a demand was made upon J. T. Adams, the defendant, or his legal guardian, for the payment of the note, and that notice to the indorser, J. T. Adams, of the dishonor of the note by the maker was excused. The Code, § 14-827, is as follows: "Notice of dishonor is not required to be given to an indorser in either of the following cases: . . (2) Where the indorser is the person to whom the instrument is presented for payment." "A petition in an action on a negotiable promissory note against an indorser thereof, which fails to allege that the indorser had been notified of the dishonor of the note or facts excusing the failure to give notice is defective. . . Where an indorser of a promissory note is the chief officer of a corporation which executed the note as maker, and the person upon whom formal presentation by creditors would have to be made of their demands for payment, or if the indorser is the proper person to whom the note may be presented for payment by the corporation, and where it is so presented and dishonored by him for and on behalf of the corporation, it is not necessary that any further or other notice be given to such indorser; but the mere fact that the indorser is the president, secretary, or other principal officer of the corporation is not sufficient to excuse notice of dishonor to such indorser, in the absence of proof that such person was the one to

whom presentment for payment by the corporation was made." Verser *v.* Sterling Oil &c. Co., 89 Okla. 114 (supra). This section (14-827) is identical with the Oklahoma Code section cited in the Verser case, supra, and is the same as section 115, 5 U. L. A. (N.I.L.). The allegations of the petition, in effect, state that J. T. Adams was the indorser on the promissory note. The petition does not merely state that he was the president of the maker corporation and signed the note for the corporation as such, but goes further and states: " 'At the time of J. T. Adams' endorsement of the note described . . , he was president of the maker of the note, Adams-Swirles Cotton Mills, a corporation of Bibb County, Georgia. He was the active managing officer of the said business and a majority stockholder of the corporation. He had under his control and management all the assets and business of Adams-Swirles Cotton Mills. It was his duty to see that funds were provided for the payment of the aforesaid note, and the note paid.' " Such allegations certainly include an allegation that said Adams was the person at the time of the execution and indorsement of the note to whom presentment for payment by the corporation was to be made, and if the petition had not shown that the charter of the corporation had not been surrendered prior to the bringing of the suit, the "doctrine of the presumption of continuity of a status" would apply until the contrary is made to appear, and presentment to Adams as president of the corporation, as the person to whom payment by the corporation should have been made, would have excused the failure to give notice to the same person, J. T. Adams, the indorser. The question for consideration is an attack on the declaration by a general demurrer on the ground that the petition does not disclose a cause of action. The "doctrine of continuity of a status," which should be applied in this case, is that a state of things once alleged in the petition to exist at a certain date will be presumed to continue to exist as before until something to the contrary is shown in the petition or otherwise, or until a different presumption is raised from the nature of the subject in question. Childs *v.* Merrill, 63 Vt. 463 (22 Atl. 626, 14 L. R. A. 264); 20 Am. Jur. 205, § 207. When considering the general demurrer, all properly pleaded allegations in the petition are admitted to be true. Thus, all properly alleged facts in the petition are to be considered as proven for the

purpose of deciding the general demurrer here. The general demurrer does not admit the legal conclusions drawn by the pleader. I am not seeking to apply the "doctrine of continuity" to merely the *ultimate fact* but to the *evidentiary* or *preliminary facts,* which the demurrer admits can be legally proved. *Lewis* v. *Amorous, 3 Ga. App.* 50, 53 (59 S. E. 338); *Bivins* v. *Tucker, 41 Ga. App.* 771, 774 (154 S. E. 820); *Story* v. *Flournoy,* 55 *Ga.* 56, 66. But when, as in the instant case, the corporation was alleged to have been dissolved, the doctrine of the presumption of continuity as to the existence of the corporation ceased to be applicable, and from this time forward the Code, § 14-713, was applicable. It is as follows: "Presentment for payment is dispensed with: (1) Where after the exercise of reasonable diligence presentment as required by this title cannot be made; (2) Where the drawee is a fictitious person; (3) By waiver of presentment, express or implied. (Acts 1924, p. 143.)" If the note was presented to Adams, the indorser, for payment after the time the maker corporation had surrendered its charter, notice of dishonor would be excused for, in the exercise of reasonable diligence, presentment could not be made. The note was signed September 30, 1929, and the petition was filed October 13, 1942. The petition alleged that "J. T. Adams has been properly adjudicated as a person of unsound mind, and R. L. Anderson Sr. has been by proper order of the court of ordinary of Bibb County, Georgia, appointed guardian of his person and property, and is now acting as such." I do not think that this allegation would change the situation, for notice to Adams after he became insane could be given through his guardian in terms of the law, and the doctrine of relationship back does not hold in cases of insanity, but only applies to continuity forward. *Humphrey* v. *State,* 46 *Ga. App.* 720, 722 (169 S. E. 53). The only positive allegation as to insanity is that the plaintiff is "now," on the 13th Day of October, 1942 (the date of the filing of the petition), insane. On the question of failure to give notice of dishonor see *Mercer* v. Hydrocarbon Converter Co., 205 App. Div. 78 (199 N. Y. Supp. 75); *Greenwade* v. First Nat. Bank of Louisa, 240 Ky. 60 (41 S. W. 2d, 369); *Phipps* v. Harding, 70 Fed. 468 (30 L. R. A. 513); *Houser* v. Fayssoux, 168 N. C. 1 (83 S. E. 692, Ann. Cas. 1917B, 835). See also Code, § 14-714, which states in part: "The instrument is dishonored by

nonpayment when: . . (2) Presentment is excused and the instrument is overdue and unpaid." The case of *Phipps* v. *Harding*, supra, disapproves *Hull* v. *Myers*, 90 *Ga.* 674 (supra). However, Houser *v.* Fayssoux, supra, distinguishes the *Hull* case from such cases as the instant one, thus: "It appears in the declaration of that case [the *Hull* case], and is admitted by the demurrer: First, 'that each of said directors so signing said notes did so as surety for the maker, and it was so understood and agreed between each of them;' and, second, 'that the maker [the company] was "utterly insolvent" at the time of the execution of the note.' The court bases its decision upon these facts, and the inference from this opinion is that the court would have decided the case differently if it had not been *understood and agreed between the directors, who indorsed their names on the notes,* that they were 'doing so as *sureties for the maker,*' or if the company had been solvent. In the case at bar, there was no understanding or agreement that the indorsers were signing the note in controversy as sureties, and there was no evidence tending to prove that the Dallas Cotton Mills was insolvent. The facts in that case distinguish it from this." It might be noted in the instant case that, if after the corporation, the maker of the note, was dissolved the note was not paid, it was dishonored for nonpayment, and thereafter presentment to the maker corporation for payment was dispensed with, for in the exercise of reasonable diligence presentment could not be made. Code, §§ 14-713, 14-715. I therefore think, under all the allegations of the petition, that here the holder of the note was excused for his failure to give notice to the indorser of the dishonor of the note by the maker corporation. For these reasons, I think that the petition was not subject to general demurrer, and I concur in the judgment of reversal.

Felton, J., dissenting. "The negotiable instruments law purports to be a codification of the law merchant, or the common law with reference to negotiable instruments. . . The act . . when adopted in a particular jurisdiction becomes pro tanto the law respecting negotiable instruments in that jurisdiction, and supersedes the law merchant obtaining in that jurisdiction as to all matters covered by the provisions of the act." *Beasley Hardware Co.* v. *Stevens,* 42 *Ga. App.* 114, 118 (155 S. E. 67). Immediately prior to the passage of the negotiable instruments law

in Georgia there was no statutory exception to the requirement that to bind an indorser of a negotiable instrument he should be notified of presentment and nonpayment. "When bills of exchange and promissory notes are made for the purpose of negotiation, or intended to be negotiated at any chartered bank, and the same are not paid at maturity, notice of the nonpayment thereof, and of the protest of the same for nonpayment or nonacceptance, must be given to the indorsers thereon within a reasonable time, either personally or by post (if the residence of the indorser be known), or the indorser will not be held liable thereon; but it shall not be necessary to protest in order to bind indorsers, except in the following cases, to wit: 1. When a paper is made payable on its face at a bank or banker's office. 2. When it is discounted at a bank or banker's office. 3. When it is left at a bank or banker's office for collection." Code (1910), § 4280. The Supreme Court in *Hull* v. *Myers*, 90 *Ga.* 674 (supra), under one construction made one exception. It was ruled that a majority of the directors of an insolvent corporation, who have under their control all the assets of their principal, and whose duty it is to see that funds are provided and the debt paid, are not entitled to notice of the dishonor of a promissory note which they endorsed for the corporation as accommodation indorsers. The reasoning of the ruling is that, since the note had to be presented to the indorsers for payment, they would know of its nonpayment and that additional notice would be superfluous. Irrespective of whether the reasoning is sound as applied to the facts of that case, the legislature in enacting the negotiable instruments law sought to cover the subject-matter of the notice necessary to bind indorsers, and set out what exceptions there should be to the general rule. The negotiable instruments law (Ga. L. 1924, p. 126), made three exceptions: "(1) Where the drawee is a fictitious person or a person not having a capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument; (2) Where the indorser is the person to whom the instrument is presented for payment; (3) Where the instrument was made or accepted for his accommodation." Code, § 14-827. The second exception stated covers the subject-matter of the exception declared in the *Hull* case, supra. The negotiable instruments law, however, restricted the circumstances under which the notice

is excused. It means that, when the indorser is the person to whom the paper *is actually presented* for payment, he is not entitled to notice. The Code, § 14-801, provides: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." By including the provision for an exception when the indorser is the person to whom the paper is presented for payment the law excluded an exception based on the fact that the paper might possibly or probably be presented to the indorser for payment. In this view, the petition in this case did not allege a sufficient excuse for failure to notify the indorser of nonpayment, nor did it allege any facts indicative of a waiver on the part of the indorser of notice of dishonor, either expressed or implied. It does not even allege a presentation and dishonor. I shall take these two questions up in inverse order. The note was due on demand and was secured by all of the cotton in the maker's warehouse, to be never less than 250 bales. The fact that there were three payments made on the note (dated September 30, 1929, January 9, 1930, and April 7, 1930) does not conclusively indicate presentment for payment or nonpayment. The payments can reasonably be accounted for by voluntary payments. No excuse for failure to notify the indorser of nonpayment appears. The petition merely alleged that *at* the time of the indorsement of the note J. T. Adams was president of the maker corporation, etc. It is not alleged that he was president, etc., at the time the note was presented or should have or might have been presented. Mr. Adams might have been succeeded by a new president the very next day, or he might have sold some of his stock or severed his relation with the corporation entirely before demand for payment was made and the note dishonored, if demand were ever made and the note dishonored. Can it be said that he waived his rights in advance? To ask is to answer the question. The mere fact that an indorser is an officer of a corporation which executes a note does not raise the presumption that the paper was executed for his accommodation. 8 Am. Jur. 395, § 718. "The fact that indorsers of corporate paper constitute a majority of the board of directors of the corporation does not dispense with the necessity of notice of dis-

honor." 8 Am. Jur. 395, § 719. It is necessary, in order to excuse notice of dishonor, that the paper was actually presented to the indorser for payment, where the indorser was the person to whom the paper was to be presented for payment in the first instance as agent of the maker of the paper. Verser *v.* Sterling Oil & Refining Co., 89 Okla. 114 (supra). That case was decided by the Supreme Court of Oklahoma, whose negotiable instruments law is identical with Georgia's on the question under discussion.

The majority evidently proceeds on the theory that a presumption of the continuance of a status once shown to exist continues, to wit, that, because the indorser occupied a certain status when the note was indorsed (that of president and majority stockholder of the corporation making the note, etc.), he continued to do so. Besides the fact that the petition itself belies such a presumption (the defendant indorser is now alleged to be insane, and the date of his insanity is not given), the presumption is a rule of evidence and does not aid pleading, which must state the ultimate fact. 41 Am. Jur. 294, § 10. See, in this connection, Herzog *v.* Atchison, T. & S. F. R. Co., 153 Cal. 496 (95 Pac. 898, 17 L. R. A. (N. S.) 428); Fredericks *v.* Tracy, 98 Cal. 685 (33 Pac. 750); Chambers *v.* Emery, 36 Utah 380 (103 Pac. 1081, Ann. Cas. 1912A, 332).

Under no view of the case does the petition allege the necessary ultimate facts of presentment and notice of dishonor. It is not sufficient that the petition allege evidentiary facts from which it *might possibly* be inferred that there was presentment for payment and notice of dishonor. I say that the petition did not even allege evidentiary facts which would even authorize such inferences, much less demand them. As I understand, the rule of pleading in Georgia, declared in every case I have been able to find where the point was ruled on, is, that as against demurrer, necessary ultimate facts must be alleged. The only exception to this rule is that, where evidentiary facts are alleged which *demand* the inference of the ultimate fact, the allegation of such evidentiary facts is held to be equivalent to an allegation of the ultimate fact required. The reason for this rule is sound, clear, and logical. If it is necessary for a plaintiff to allege that a certain event took place in the daytime, an allegation that it took place when the sun was directly overhead as to that particular place is equivalent

to an allegation of the ultimate fact that it took place in the daytime, because from the evidentiary facts alleged the only conclusion is the existence of the ultimate fact. "It is *not enough* to aver facts from which the ultimate fact *may* be inferred, unless the evidentiary facts pleaded are such as to *demand* the inference of its existence." (Emphasis mine.) *Bivins* v. *Tucker,* 41 *Ga. App.* 771 (154 S. E. 820). That case cites *Wright* v. *Hicks,* 15 *Ga.* 160 (3) (60 Am. D. 687), *Charleston & W. C. R. Co.* v. *Augusta Stockyard Co.,* 115 *Ga.* 70 (41 S. E. 598), *Maynard* v. *Armour Fertilizer Works,* 138 *Ga.* 549 (5) (75 S. E. 582), *Davis* v. *Arthur,* 139 *Ga.* 75 (4) (76 S. E. 676), and several cases from this court. The case of *Charleston & W. C. R. Co.* v. *Augusta Stockyard Co.,* supra, was cited approvingly in *Aiken* v. *Armistead,* 186 *Ga.* 368, 389 (198 S. E. 237). This court has since followed the *Bivins* v. *Tucker* case, supra. The rule is different in construing evidence. The distinction is shown by the cases cited in *Bivins* v. *Tucker,* supra, and others. If *Hull* v. *Myers,* supra, impliedly holds to the contrary, it is only a physical precedent and is not binding on the point. However, my interpretation of the ruling in that case is, that under the facts of that case the indorsers were liable as principals because the indorsers themselves actually borrowed the money. They were the payees· in the note, and yet they advanced not one penny of their money. They did not lend the money to the corporation, take the note, and thereafter· sell it.

*Toler* v. *Goodin,* 200 *Ga.* (37 S. E. 2d, 609), recently decided, two Justices dissenting, follows the reasoning of the majority in this case, but it is contrary to older unanimous cases and is not binding as a precedent. The action was for specific performance of an alleged contract to adopt the plaintiff, made between the plaintiff's father and a Mr. and Mrs. C. J. Toler. The petition did not state specifically that the alleged contract to adopt had been breached or that a court of equity had jurisdiction because the Tolers ˙failed to actually legally adopt the plaintiff. The court held that it was necessary, against a general demurrer, to allege the fact of non-adoption but that from the facts alleged it was necessarily impliedly alleged that the Tolers failed and refused to adopt the plaintiff. My view is that the court in that case misapplied the rule which I have quoted, that evidentiary

facts are not sufficient to allege ultimate facts unless the inference of the ultimate fact is demanded. There is but one kind of adoption in Georgia and that is a legal adoption, which requires the solemn decree of a court. If you accept as true every fact alleged in the petition in the *Toler* v. *Goodin* case, the inference that the Tolers did not adopt the plaintiff is *not only not demanded, it is not even authorized* under the broader scope permissible under the construction-of-evidence rule. The only Georgia case cited to sustain the court's ruling is that of *Davis* v. *Arthur,* supra, which was cited in *Bivins* v. *Tucker,* supra, to support a contrary ruling. The evidentiary facts alleged in the instant case do not demand the inference that the note was presented for payment to the indorser in his capacity as representative of the maker of the note, or that it was presented to anybody else, or that notice of nonpayment was given to the indorser, or that he waived any right he had under the law. What I might think of the "equities" of the case has nothing to do with my duty to decide the law as I am sworn to do.

My view that the petition is defective and subject to demurrer for failure to allege presentment and notice of dishonor, or a valid excuse for the absence of these essential ingredients of pleading in an action against an indorser on a negotiable instrument, is admirably supported by the following cases, discussing this principle of pleading: *Evans* v. *Dickey, 50 Ga. App. 127* (177 S. E. 87); *Guaranty Life Insurance Co.* v. *Graham, 58 Ga. App. 767* (199 S. E. 829); *Gulf Life Insurance Co.* v. *Davis, 52 Ga. App. 464* (183 S. E. 640); *Miller* v. *Quaker Savings Assn., 53 Ga. App. 703* (186 S. E. 885); *Crosby* v. *Calaway, 65 Ga. App. 266* (16 S. E. 2d, 155); *Central of Ga. Ry. Co.* v. *Tapley, 145 Ga. 792* (89 S. E. 841). In the *Evans* case, supra, we find this excellent statement of the rule of pleading here under discussion: "Allegations of matters vitally essential to set up a good cause of action will not be implied from the pleading, but must be distinctly made therein." In the *Miller* case, supra, it was held that on general demurrer allegations of the petition must be construed most strongly against the pleader, and essential allegations to make out a cause of action will not be presumed, but must be distinctly averred. These and similar rulings, different only in the language used, appear in the other cases cited above.

The specially concurring opinion seeks to sustain the petition on the ground that a general demurrer does not reach the defect in the petition, which fails to allege facts authorizing a finding of waiver of notice of nonpayment by so-called implication. There are many decisions from our Georgia courts to the effect that a petition which does not allege a fact necessary to state a cause of action is subject to general demurrer. I will nevertheless cite *Moore* v. *Seabord Air-Line Ry. Co.,* 30 *Ga. App.* 466 (118 S. E. 471), and cases there cited; *Mackler* v. *Lahman,* 196 *Ga.* 535 (27 S. E. 2d, 35); *Toney* v. *Ledford,* 184 *Ga.* 856 (193 S. E. 761); and see the numerous cases cited under the catchword "Petition" under the Code, § 105-801 (Ann.), holding that the failure to allege any one of the elements of malicious prosecution is fatal as against a general demurrer; and see in this connection also 41 Am. Jur. 335, § 66, where it is stated that, "if material allegations are omitted, it will be presumed in the absence of an application to amend that they do not exist." It is an elementary rule of pleading that a petition is construed on demurrer most strongly against the pleader (*Pink* v. *A. A. A. Highway Exp.,* 191 *Ga.* 502, 13 S. E. 2d, 337; *Daigrepont* v. *Tech Greyhound Lines,* 189 *Ga.* 601, 7 S. E. 2d, 174, 127 A. L. R. 217); and, in view of these two rulings when applied to the petition in this case, which fails to allege notice of dishonor or any valid excuse for such failure, I think it is inescapable that the court erred in sustaining the general demurrer. See especially *Gainesville News* v. *Harrison,* 58 *Ga. App.* 744 (199 S. E. 559); and, for a definitive settlement of the question that a general demurrer *does* reach the defect of a petition failing to allege facts authorizing a finding of waiver of notice of non-payment, see *Ennis* v. *Reynolds,* 127 *Ga.* 112 (supra); *American Bank & Trust Co.* v. *McIntire,* 30 *Ga. App.* 593 (118 S. E. 582). In both of these cases the general demurrer to the petition contained almost the identical language of the general demurrer in this case, and both of our appellate courts held that the petition was defective and properly dismissed, and these decisions are binding upon this court. See also *DeLoach* v. *Adams Loan & Investment Co.,* 62 *Ga. App.* 61 (7 S. E. 2d, 580).

As to Judge MacIntyre's special concurrence: A demand on the indorser or his representative would not dispense with present-

ment for payment to the maker and notice of dishonor to the indorser. It takes both of those factors to render the indorser liable, unless they are for some reason excused. It seems to me that the trouble with the views of all the judges concurring in a reversal is that they have confused the rules and laws of evidence with the law of pleading, or vice versa. "The difference between a necessary allegation in a declaration and the evidence which may be sufficient to sustain such allegation is clear." *Kendall* v. *Wells,* 126 *Ga.* 343 (55 S. E. 41); *Kirkland* v. *Brewton, 32 Ga. App.* 128 (122 S. E. 814). In pleading there is no such thing as an inference except where the evidentiary facts demand the ultimate fact. An inference is a deduction from facts proved, not facts alleged. For various definitions, see 43 C. J. S. 373. This concurring opinion assumes or infers from facts alleged that presentment was made to the maker while it was doing business, that it was made while he was still a director and still president or in control, and while the indorser was still mentally competent, or that notice of dishonor was given to the guardian, or that no presentment was made while the corporation was in business, and that it was thereafter excused. I have already cited authority for the proposition that an allegation of a status once existing does not permit an inference in pleading that it continues. That is a rule of evidence exclusively. The ruling in this case about amounts to holding that any petition would set forth a cause of action merely because the suit was filed. This question of inferring the ultimate fact from evidentiary facts at the pleading stage is analogous to the application of the maxim of res ipsa loquitur to pleading, and it is well settled that the maxim of res ipsa loquitur does not aid defective pleading. That maxim is simply a rule of evidence. *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (47 S. E. 329).

I am further of the opinion that, in this special concurrence, the allegation touching upon the insanity of J. T. Adams has been misconstrued. The allegation is: "J. T. Adams has been properly adjudicated as a person of unsound mind, and R. L. Anderson Sr. has been by proper order of the court of ordinary of Bibb County, appointed guardian of his person and property, and is now acting as such." This is not an allegation that J. T. Adams was adjudicated of unsound mind as of the date of the filing of the petition. It is merely an allegation that R. L. Anderson Sr.

is "now" (the date of the suit) acting as guardian. The fact that R. L. Anderson is now acting as guardian casts not one scintilla of light upon the question of the date when J. T. Adams was adjudicated insane, and to presume or infer that his insanity was adjudicated as of the date of the filing of the suit, would be a construction of the petition most favorable to the pleader.

The expression, "waiver, express or implied," in my opinion does not mean that one can impliedly waive a right. Waiver is the "intentional relinquishment of a known right." What the expression, "waiver implied," means is that the *law* may imply from facts and circumstances, outside of an express waiver, that one intentionally waived a right. There is no fact alleged in this case from which it can be inferred that the indorser waived presentment for payment, protest, or notice of nonpayment.

.ON MOTION FOR REHEARING.

MacIntyre, J., specially concurring. One of the contentions of the movant in his motion for a rehearing is that "the words 'is presented for payment,' as used therein [Code, § 14-827] denote actual presentment, not theoretical or presumptive presentment; and there being no allegation of an actual presentation of the note, to the indorser, for payment in the instant case, the decisions complained of were necessarily based upon a presumption or inference that the note was presented to the indorser for payment." In one paragraph of the petition it was alleged: "The said note of $15,000.00 is past due and unpaid, with the exception of the credits herein shown, and the defendant has failed and refused to pay the same." In another paragraph of the petition it was alleged: "More than ten days prior to the institution of this suit, to wit, on September 30, 1942, your petitioner gave notice in terms of the statute of the State of Georgia of her intention to file this suit, and to ask judgment for the principal aforesaid, together with interest at the rate of eight per cent. per annum, and fifteen per cent. attorney's fees." I think that these allegations of the petition were the equivalent of stating that the indorser or his guardian had refused to pay the note, and also that before bringing the suit the plaintiff, only 13 days prior thereto, gave notice in terms of the law to the indorser through his guardian that, if the note was not paid, suit would be brought for the prin-

cipal, interest, and attorney's fees. This, I think, will withstand a ground of the general demurrer which urges that the note was not presented for payment to the indorser.